# ST. LOUIS, VANDALIA AND TERRE HAUTE RAILROAD COMPANY v. TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS

No. 42. Argued April 24, 27, 28, 1891. — Decided May 16, 1892.

The statute of Illinois of February 12, 1855, empowering all railroad corporations incorporated under the laws of the State to make " contracts and arrangements with each other, and with railroad corporations of other States, for leasing or running their roads," authorizes a railroad corporation of Illinois to make a lease of its road to a railroad corporation of another State; but confers no power on a railroad corporation of the other State to take such a lease, if not authorized to do so by the laws of its own State.

A railroad corporation of Indiana is not empowered to take a lease of a railroad in another State by the statute of Indiana of February 23, 1853, c. 85, authorizing any railroad corporation of that State to unite its railroad with a railroad constructed in an adjoining State, and to consolidate the stock of the two companies; or to extend its road into another State; or " to make such contracts and agreements with any such road constructed in an adjoining State, for the transportation of freight and passengers, or for the use of its said road, as to the board of directors may seem proper."

A lease for nine hundred and ninety-nine years by one railroad corporation

of its railroad and franchise to another railroad corporation, which is *ultra vires* of one or of both, will not be set aside by a court of equity at the suit of the lessor, when the lessee has been in possession, paying the stipulated rent, for seventeen years, and has taken no steps to repudiate or rescind the contract.

THIS was a bill in equity, filed July 6, 1887, by the St. Louis, Vandalia and Terre Haute Railroad Company, a corporation of Illinois, against the Terre Haute and Indianapolis Railroad Company, a corporation of Indiana, to set aside and cancel a conveyance of the plaintiff's railroad and franchises to the defendant for a term of nine hundred and ninety-nine years. The bill contained the following allegations :

That the plaintiff was incorporated by a statute of Illinois of February 10, 1865, amended by a statute of February 8, 1867, to construct and maintain a railroad from the left bank of the Mississippi River opposite St. Louis eastward through the State of Illinois to a point on the Wabash River, convenient for extending its road to Terre Haute in the State of Indiana ; and was not authorized by its charter, or by any law of Illinois, to lease its railroad, or by any other contract or conveyance to part with the entire possession, control and use of its property and franchises, or to deprive itself of and vest in others the power of control in the management of its said road and other property and in the exercise of its franchises, including the right to impose and collect tolls for the transportation of passengers and freight, indefinitely or for any fixed period of time.

That the defendant was incorporated by a statute of Indiana of January 26, 1847, amended by a statute of March 6, 1865, to construct and maintain a railroad from some point on the western line of the State of Indiana eastward through Terre Haute to Indianapolis ; and was not authorized by its charter, or by any law of Indiana, to make or accept any lease, contract or other conveyance by which it should acquire or obtain, either indefinitely or for a fixed time, the ownership, management or control of any railroad located beyond the limits of Indiana.

That the plaintiff proceeded to construct, and on or about

July 1, 1870, completed the construction and equipment of its road; that in order to obtain money for this purpose, on April 6, 1867, it executed a mortgage or deed of trust of all its railroad, property and franchises, to secure the payment of bonds amounting to $1,900,000, and agreeing to set apart annually from its earnings the sum of $20,000, as a sinking fund for payment of the bonds; that on March 13, 1868, it executed a second mortgage to secure the payment of additional bonds to the amount of $2,600,000; that all the bonds aforesaid were sold, and outstanding and unpaid; and that no sinking fund had been created, as provided for in the first mortgage.

That on February 10, 1868, the plaintiff and the defendant executed a pretended lease, (set forth in the bill, and copied in the margin,[1]) of the plaintiff's railroad, property and franchises

---

[1] Whereas a contract for the construction and equipment of the St. Louis, Vandalia and Terre Haute Railroad, belonging to a corporation of the State of Illinois, has been entered into this day, by which arrangements have been made to complete and equip said road between East St. Louis and the State line of Indiana in the manner set forth in said contract:

And whereas the Terre Haute and Indianapolis Railroad Company, a corporation of the State of Indiana, has proposed to construct without delay a first-class railroad, being an extension of their present road from Terre Haute to the state line of Indiana, upon such location as will connect properly and directly with the St. Louis, Vandalia and Terre Haute Railroad at the state line of Illinois:

And whereas it is desirable that the said lines when connected should be operated by the Terre Haute and Indianapolis Railroad Company as one road between Indianapolis and St. Louis, and the said Terre Haute and Indianapolis Railroad Company having proposed to lease and operate the said St. Louis, Vandalia and Terre Haute Railroad for a period of nine hundred and ninety-nine years: It is therefore agreed, first—

That upon the completion of the road between East St. Louis and the state line of Indiana, the Terre Haute and Indianapolis Railroad Company shall take charge of and operate the same with its equipment for a period of nine hundred and ninety-nine years, for which they shall be allowed sixty-five per cent of the gross receipts from all traffic moved over the line, or business done thereon, and from the property of the company, as a consideration for working and maintenance expenses, the remaining thirty-five per cent to be appropriated as follows: 1st. To the payment of interest on the first and second mortgage bonds of the St. Louis, Vandalia and Terre Haute Railroad Company according to their legal priority. 2d. All the surplus of said thirty-five per cent to be paid over to the

to the defendant for nine hundred and ninety-nine years, the defendant retaining sixty-five per cent of the gross receipts, and the rest to be applied to the payment of interest on the mortgage bonds, and any surplus paid to the plaintiff.

That on January 12, 1869, the plaintiff's board of directors passed a resolution, undertaking to authorize its president to change the terms of said lease so that the defendant should be allowed seventy, instead of sixty-five per cent of the gross receipts, "but if the working and maintenance expenses of said road shall be less than seventy per cent of the gross receipts aforesaid, then all of such excess shall be paid over to" the plaintiff.

That by a statute of Illinois of February 16, 1865, in force at the time of the execution and delivery of the pretended lease, it was not lawful for any railroad company of Illinois,

---

St. Louis, Vandalia and Terre Haute Railroad Company semi-annually, to be disposed of by it for the benefit of 'its stockholders.

If the thirty-five per cent should from any cause not be sufficient in amount to protect the interest on mortgage bonds and sinking funds therefor as they mature from time to time, together with the payment of taxes and proper cost of maintaining organization, so that the rights of stockholders may be preserved, then and in that event the lessee shall advance for the company whatever amounts may be needed, to be accounted for under the yearly averages of this lease during this contract.

It is further agreed that the Terre Haute and Indianapolis Railroad Company as lessee shall enjoy all the rights, powers and privileges of the St. Louis, Vandalia and Terre Haute Railroad Company, so far as the same may be needful to maintain and operate said railroad; also to impose and collect tolls and rates for transportation, and do all other acts and things, as fully and as effectually as the said St. Louis, Vandalia and Terre Haute Railroad Company could do if operating said line, it always being understood and agreed that the gross proceeds from through or joint traffic or business shall be divided on the *pro rata* basis per mile for distance moved on the road of each party.

In witness whereof the parties have respectively hereunto affixed, this the tenth day of February, 1868, their official signatures and seals under authority of their boards of directors.

THE ST. LOUIS, VANDALIA AND TERRE HAUTE RAILROAD COMPANY,
[SEAL.]                 By J. F. ALEXANDER, *President.*

THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY,
[SEAL.]                 By W. R. McKEEN, *President.*

or its directors, to consolidate its railroad with any railroad out of the State, or to lease its railroad to any railroad company out of the State, or to lease any railroad out of the State, without the written consent of all its stockholders residing within the State; and that fifty-nine of the plaintiff's stockholders residing in Illinois never consented to or ratified the lease.

That, on the completion of the plaintiff's road, the defendant took possession of and had ever since operated it, and had received, in tolls and otherwise, more than $21,600,000; that the pretended lease was void, for want of lawful power in either party to enter into it; that the defendant, by taking possession of the plaintiff's railroad and property without right, became in equity a trustee of the plaintiff, and liable to account to it for the property and for all tolls and emoluments which the defendant had, or ought to have, collected and received therefrom, and to restore the property to the plaintiff; that the defendant had refused, though requested, to turn over to the plaintiff the road and property, or the income thereof, and had thus rendered the plaintiff unable to establish a sinking fund, as required by the first mortgage; and that great and irreparable injury would be done to the plaintiff and its stockholders unless it was restored to the possession and control of the railroad, property and franchises.

That at the time when the lease was executed by the plaintiff its officers supposed that it had lawful power to do so; but that it had recently been advised by counsel that it had no such power, that it was its duty at once to repudiate this pretended lease and to resume the possession, control and use of its property and franchises, and that it had rendered itself liable to have its charter forfeited by the State; that the present income was more than sufficient to pay the interest on the bonds and to establish a sinking fund; and that, by reason of the failure to establish a sinking fund, proceedings might at any time be instituted to foreclose the first mortgage.

That the taking of long and complicated accounts, covering a period of nearly seventeen years and involving a great many items, was necessary for the protection and enforcement of

the plaintiff's rights; that the pretended lease was a cloud on the plaintiff's title; that a court of law had no jurisdiction adequate to take the account or to cancel the lease; and that the defendant was daily withdrawing large sums of money from the jurisdiction of the court to the irreparable injury of the plaintiff.

The bill, as originally framed, prayed for a cancellation and surrender of the lease, for a return of the railroad and other property held under it, for an injunction against disturbing the plaintiff in the possession and control thereof, and for an account of the sums which the defendant had received, or with due diligence might have received, from the use and operation of the railroad and property; or, if the lease should be held valid, for an account of the sums due under the lease; and for further relief.

The defendant demurred to the bill, for want of equity, for laches, for multifariousness, and because the plaintiff had an adequate remedy at law. The Circuit Court sustained the demurrer on all these grounds, as stated in its opinion reported in 33 Fed. Rep. 440. The plaintiff thereupon, by leave of court, amended the bill, by striking out the prayer for alternative relief in case the lease should be held valid. The defendant demurred to the amended bill, on the same grounds as before, except multifariousness. The court, delivering no further opinion, sustained the demurrer, and dismissed the bill; and the plaintiff appealed to this court.

*Mr. Lyman Trumbull* and *Mr. John M. Butler* (with whom were *Mr. Henry S. Robbins* and *Mr. Perry Trumbull* on the brief) for appellant.

I. The execution of the lease by the appellee was *ultra vires* and for this reason void. *Pennsylvania Railroad* v. *St. Louis &c. Railroad,* 118 U. S. 290; *Oregon Railway Company* v. *Oregonian Railway,* 130 U. S. 1; *Tippecanoe County* v. *Lafayette &c. Railroad,* 50 Indiana, 85; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Canada Southern Railway* v. *Gebhard,* 109 U. S. 527; *Starkweather* v. *Am. Bible Society,* 72 Illinois,

50; *St. Clara Female Academy* v. *Sullivan*, 116 Illinois, 375; *Thompson* v. *Waters*, 25 Michigan, 214; *Diamond Match Co.* v. *Powers*, 51 Michigan, 145.

II. The appellant could not, by its charter, yield up the control of its road, as attempted by this lease, and it is for this reason void. *Railroad Co.* v. *Vance*, 96 U. S. 453; 3 Starr & Curtis (Ill.) Stat. 447; *Eagle* v. *Kohn*, 84 Ill. 292; *Richeson* v. *People*, 115 Illinois, 450; *Farmers' Loan & Trust Co.* v. *St. Joseph & Denver Railroad*, 1 McCrary, 247; *S. C.* 2 Fed. Rep. 117; *Archer* v. *Terre Haute &c. Railroad Co.*, 102 Illinois, 493; *Great Northern Railway* v. *Eastern Railway*, 9 Hare, 306; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Pennsylvania Railroad* v. *St. Louis, Alton &c. Railroad*, 118 U. S. 290; *Stevens* v. *Pratt*, 101 Illinois, 206; *Carroll* v. *Carroll*, 16 How. 275; *Foxcraft* v. *Mallett*, 4 How. 353; *Thomas* v. *Hatch*, 3 Sumner, 170; *Lauriat* v. *Stratton*, 6 Sawyer, 339; *Pease* v. *Peck*, 18 How. 595.

III. The lease being *ultra vires*, and void, it could not be made valid by any lapse of time, acquiescence or ratification by the parties. *York &c. Railroad* v. *Winans*, 17 How. 39; *Black* v. *Delaware & Raritan Canal Co.*, 22 N. J. Eq. 130, 399; *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Pennsylvania Railroad* v. *St. Louis, Alton &c. Railroad*, 118 U. S. 290; *Oregon Railway* v. *Oregonian Railway*, 130 U. S. 1; *Newcastle Northern Railway* v. *Simpson*, 21 Fed. Rep. 533; *Tippecanoe County* v. *Lafayette &c. Railroad*, 50 Indiana, 85.

IV. The lease being void, it was the right as well as the duty of complainant to recover its property, and thus place itself again in a position to discharge its public duties. *Thomas* v. *Railroad Co.*, 101 U. S. 71; Story's Eq. Jur. § 298; Pomeroy's Eq. Jurisprudence, § 941; *Debenham* v. *Ox*, 1 Ves. Sr. 276; *Smith* v. *Bruning*, 2 Vern. 392; *Drury* v. *Hooke*, 1 Vern. 412; *St. John* v. *St. John*, 11 Ves. 526; *O'Conner* v. *Ward*, 60 Mississippi, 1025; *Morris* v. *McCullock*, 1 Amb. 432; *Newcastle Northern Railroad* v. *Simpson*, 21 Fed. Rep. 533; *Atlantic & Pacific Telegraph Co.* v. *Union Pacific Railroad*, 1 Fed. Rep. 745; *Western Union Telegraph Co.* v. *St. Joseph & Western Railroad*, 3 Fed. Rep. 430.

V. This bill makes a case for chancery jurisdiction, and appellant is not obliged to resort to a court of law. Constitution of Illinois, 1870, art. 11, sec. 10; *Iron Mountain &c. Railroad* v. *Johnson*, 119 U. S. 608; Pomeroy's Eq. Jur. § 941; Story's Eq. Jur. § 298; *Debenham* v. *Ox*, 1 Ves. Sr. 276; *Drury* v. *Hooke*, 1 Vern. 412; *St. John* v. *St. John*, 11 Ves. 526; *Smith* v. *Bruning*, 2 Vern. 392; *Morris* v. *McCulloch*, 1 Amb. 432; *New Castle Northern Railroad* v. *Simpson*, 21 Fed. Rep. *supra*; *Telegraph Co.* v. *Union Pacific R. R. Co.*, 1 Fed. Rep. 745; *Western Union Telegraph Co.* v. *St. Joseph & Western Railroad*, 3 Fed. Rep. 430; *Railway Companies* v. *Keokuk Bridge Co.*, 131 U. S. 389; *Parkersburg* v. *Brown*, 106 U. S. 487; Green's Brice's Ultra Vires, 717; *Farmer's Loan & Trust Co.* v. *St. Joseph & Denver City Railroad*, *ubi supra*; *Spring Co.* v. *Knowlton*, 103 U. S. 49; *White* v. *Franklin Bank*, 22 Pick. 181; *Day* v. *Spiral Springs Buggy Co.*, 57 Michigan, 146; *Foulke* v. *San Diego Railroad*, 51 California, 365; *Harriman* v. *First Baptist Church*, 63 Georgia, 186; *Davis* v. *Old Colony Railroad*, 131 Mass. 258; *Hardy* v. *Metropolitan Land Co.*, L. R. 7 Ch. 427; *Ernest* v. *Croysdill*, 2 De G. F. & J. 175, 197; *Bryson* v. *Warwick Canal Co.*, 4 De G. M. & G. 711, 731; *Salomons* v. *Llaing*, 12 Beav. 377.

VI. The right to maintain this suit is not barred by laches. *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 183; *Alton* v. *Illinois Transportation Co.*, 12 Illinois, 38; *S. C.* 52 Am. Dec. 479; *Brown* v. *Buena Vista County*, 95 U. S. 157; Rev. Stats. Illinois, c. 83, § 1; *Medley* v. *Elliott*, 62 Illinois, 532.

*Mr. George Hoadly* for appellee.

MR. JUSTICE GRAY, after stating the case as above, delivered the opinion of the court.

The object of this suit between two railroad corporations, as stated in the amended bill, is to have a contract, by which the plaintiff transferred its railroad and equipment, as well as

its franchise to maintain and operate the road, to the defendant for a term of nine hundred and ninety-nine years, set aside and cancelled, as beyond the corporate powers of one or both of the parties.

The contract, dated February 10, 1868, recites that the plaintiff is a corporation of Illinois, and the defendant a corporation of Indiana; that their railroads connect at the line between the two States; that it is desirable that the two roads should be operated by the defendant as one road; and that the defendant has "proposed to lease and operate" the plaintiff's road for a period of nine hundred and ninety-nine years. "It is therefore agreed" that, upon the completion of the plaintiff's road to the state line, the defendant "shall take charge of and operate the same with its equipment" for that period, and "shall be allowed sixty-five per cent of the gross receipts from all traffic moved over the line, or business done thereon, and from the property of the company, as a consideration for working and maintenance expenses," and shall appropriate the rest of such receipts to the payment of interest on the plaintiff's mortgage bonds, and pay any surplus to the plaintiff, for the benefit of its stockholders. Within a year afterwards, the contract was modified by providing that the defendant should be allowed seventy (instead of sixty-five) per cent of the gross receipts, "but if the working and maintenance expenses of said road shall be less than seventy per cent of the gross receipts aforesaid, then all of such excess shall be paid over to the" plaintiff. It is further agreed in the contract that the defendant "shall enjoy all the rights, powers and privileges of the" plaintiff, "so far as the same may be needful to maintain and operate said railroad," and may "impose and collect tolls and rates for transportation, and do all other acts and things, as fully and as effectually as the" plaintiff "could do if operating said line."

In short, by this contract one railroad corporation undertook to transfer its whole railroad and equipment, and its privilege and franchise to maintain and operate the road, to another railroad corporation for a term of nine hundred and ninety-nine years, in consideration of the payment from time

to time by the latter to the former of a certain portion of the gross receipts. This was, in substance and effect, a lease of the railroad and franchise for a term of almost a thousand years, and was a contract which neither corporation had the lawful power to enter into, unless expressly authorized by the State which created it, and which, if beyond the scope of the lawful powers of either corporation, was unlawful and wholly void, could not be ratified or validated by either or both, and would support no action or suit by either against the other. *Thomas* v. *Railroad Co.*, 101 U. S. 71; *Pennsylvania Railroad* v. *St. Louis, Alton & Terre Haute Railroad*, 118 U. S. 290, 630; *Oregon Railway* v. *Oregonian Railway*, 130 U. S. 1; *Central Transportation Co.* v. *Pullman's Car Co.*, 139 U. S. 24.

Upon the question whether this contract was *ultra vires* of either corporation, this case cannot be distinguished in principle from *Pennsylvania Railroad* v. *St. Louis, Alton & Terre Haute Railroad*, above cited.

By the statute of Illinois of February 12, 1855, all railroad companies incorporated under the laws of the State were empowered to make "contracts and arrangements with each other, and with railroad corporations of other States, for leasing or running their roads, or any part thereof." Illinois Private Laws of 1855, p. 304; Rev. Stat. of 1874, c. 114, § 34. By the grammatical and the natural construction, the words "their roads" include roads of Illinois corporations, as well as roads of corporations of other States, and the power conferred on corporations of Illinois to make contracts "for leasing" such roads includes making, as well as taking, leases thereof. Such was the opinion expressed in the case just cited, at page 309, and we see no reason for departing from it.

The plaintiff relies on the statute of Illinois of February 16, 1865, (in force at the date of this contract, but since repealed by the Revised Statutes of 1874,) by which it was enacted that "it shall not be lawful for any railroad company of Illinois, or for the directors of any railroad company of Illinois, to consolidate their road with any railroad out of the State of Illinois, or to lease their road to any railroad company

out of the State of Illinois, or to lease any railroad out of the State of Illinois, without having first obtained the written consent of all of the stockholders of said roads residing in the State of Illinois, and any contract for such consolidation or lease which may be made without having first obtained said written consent, signed by the resident stockholders in Illinois, shall be null and void;" and it was provided "that nothing in this act shall be so construed as to authorize the consolidation of any of said railroads with railroads out of the State of Illinois." Illinois Public Laws of 1865, p. 102.

Although this statute, in terms, declares that any such lease, made without the written consent of the Illinois stockholders, "shall be null and void," it would seem to have been enacted for the protection of such stockholders alone, and intended to be availed of by them only. It did not limit the scope of the powers conferred upon the corporation by law, an excess of which could not be ratified or be made good by estoppel; but only prescribed regulations as to the manner of exercising corporate powers, compliance with which the stockholders might waive, or the corporation might be estopped, by lapse of time, or otherwise, to deny. *Zabriskie* v. *Cleveland &c. Railroad,* 23 How. 381, 398; *Central Transportation Co.* v. *Pullman's Car Co.,* 139 U. S. 24, 42, 60; *Davis* v. *Old Colony Railroad,* 131 Mass. 258, 260; *Beecher* v. *Marquette & Pacific Co.,* 45 Michigan, 103; *Thomas* v. *Citizens' Railway,* 104 Illinois, 462.

The decision of the Supreme Court of Illinois in *Archer* v. *Terre Haute & Indianapolis Railroad,* 102 Illinois, 493, cited by each party at the argument, does not appear to have any important bearing upon this case. The point there decided was that the contract now in question, not being satisfactorily proved in that case to have been either assented to or ratified by the stockholders residing in Illinois, had no effect, as a lease, to convey title to the defendant, and could be sustained, if at all, only as a contract for the connection of the two railroads, and, in either aspect, did not confer on the defendant any right to maintain a bill in equity against collectors of taxes to restrain the collection of taxes assessed to the present plaintiff. Upon questions discussed in the opinion and not neces-

sary to the judgment, or not considered at all, the case cannot be regarded as a decision, because, as observed by Mr. Justice Curtis speaking for this court, "to make it so, there must have been an application of the judicial mind to the precise question necessary to be determined to fix the rights of the parties." *Carroll* v. *Carroll*, 16 How. 275, 287.

It is unnecessary, however, to express a definitive opinion upon the question whether the contract between these parties was beyond the corporate powers of the plaintiff, because, as is established by the decisions of this court, already cited, a contract beyond the corporate powers of either party is as invalid as if beyond the corporate powers of both, and the contract now in question was clearly beyond the corporate powers of the defendant.

The case in this respect is governed by the direct adjudication of this court in the case of *Pennsylvania Railroad* v. *St. Louis, Alton & Terre Haute Railroad*, above cited, which was much considered, both upon argument at the bar, and upon petition for a rehearing. The only differences between that case and this are that the contract in that case was for ninety-nine years, whereas in this it is for nine hundred years more; that the rent is computed in a different way, which does not alter the nature and effect of the transaction; and that in that case the two roads did not connect at the state line, but a few miles east of it, which was held to be immaterial. 118 U. S. 295–297.

The plaintiff in that case, like the defendant in this, sought to support the validity of the contract under the statute of Indiana of February 23, 1853, c. 85, of which section 1 authorized any railroad company of Indiana "to intersect, join and unite its railroad with any other railroad" constructed in an adjoining State, at any point on the state line or elsewhere to which the charters of the two companies authorized their roads to go, and to consolidate the stock of the two companies; section 2 authorized any railroad company of Indiana whose road went to the state line "to extend its said railroad into or through any other State," under such regulations as might be prescribed by the laws thereof; and section 3 authorized any

railroad company of Indiana, whose road met and connected at the state line with a railroad in an adjoining State, "to make such contracts and agreements with any such road constructed in an adjoining State, for the transportation of freight and passengers, or for the use of its said road, as to the board of directors may seem proper." Indiana Rev. Stats. of 1881, §§ 3971–3973.

At the argument of that case, indeed, the third section, being the one affording the most plausible ground, was principally relied on, and was the only section of this statute discussed in the original opinion. 118 U. S. 312. But in that opinion reference was made to *Tippecanoe Commissioners* v. *Lafayette &c. Railroad,* in which the Supreme Court of Indiana held that this statute did not authorize one railroad corporation to lease its railroad to another with a right of perpetual renewal, and said: "To connect one road with another does not fairly mean to lease or sell it to another." 50 Indiana, 85, 110; 118 U. S. 312. And upon the petition for rehearing all three sections of the statute in question, as well as other statutes of Indiana, were cited by counsel and examined by the court, although its conclusions were briefly stated, according to its usage in an opinion delivered on a petition for rehearing. 118 U. S. 633, 634.

It is argued for the defendant that this suit is distinguished from the former one in being brought, not, as that was, in Indiana, but in Illinois, and must therefore be controlled by the law and policy of Illinois; and it is contended that the statute of Illinois of 1855, above cited, empowered the defendant, though an Indiana corporation, to take a lease of a railroad in Illinois. But such a suit as this is governed, so far as regards the validity of the contract, not by the law of the forum, but by the law of the contract; and the statute of Illinois was manifestly intended to confer power on domestic corporations only, leaving the powers of corporations incorporated elsewhere to be determined by the laws by and under which they were incorporated, even if a State could confer on a foreign corporation powers which it did not have by the laws of its own State. *Canada Southern Railway* v. *Gebhard,* 109

U. S. 527, 537; *Christian Union* v. *Yount,* 101 U. S. 352; *Starkweather* v. *American Bible Society,* 72 Illinois, 50; *Santa Clara Academy* v. *Sullivan,* 116 Illinois, 375, 385.

It may therefore be assumed, as contended by the plaintiff, that the contract in question was *ultra vires* of the defendant, and therefore did not bind either party, and neither party could have maintained a suit upon it, at law or in equity, against the other.

It does not, however, follow that this suit to set aside and cancel the contract can be maintained. If it can, it is somewhat remarkable that, in the repeated and full discussions which the doctrine of *ultra vires* has undergone in the English courts within the last fifty years, no attempt has been made to bring a suit like this. The only cases cited in the elaborate briefs for the plaintiff, or which have come to our notice, approaching this in their circumstances, are in American courts not of last resort, and present no sufficient reasons for maintaining this suit. *Auburn Academy* v. *Strong,* Hopkins Ch. 278; *Atlantic & Pacific Telegraph Co.* v. *Union Pacific Railway,* 1 McCrary, 541; *Western Union Telegraph Co.* v. *St. Joseph & Western Railway,* 1 McCrary, 565; *Union Bridge Co.* v. *Troy & Lansingburgh Railroad,* 7 Lansing, 240; *New Castle Railway* v. *Simpson,* 21 Fed. Rep. 533.

The English cases relied on by the plaintiff were either suits to set aside marriage brokage bonds, as in *Drury* v. *Hooke,* 1 Vernon, 412, and *Smith* v. *Bruning,* 2 Vernon, 392; *S. C. nom. Goldsmith* v. *Bruning,* 1 Eq. Cas. Ab. 89; or to recover back money paid for the purchase, without leave of the Crown, of a commission in the military or naval service, as in *Morris* v. *McCullock,* Ambler, 433; *S. C.* 2 Eden, 190. Those cases have sometimes been justified upon the ground that, the agreement being against the policy of the law, the relief was given to the public through the party. *Debenham* v. *Ox,* 1 Ves. Sen. 276; *St. John* v. *St. John,* 11 Ves. 526, 536; *Cone* v. *Russell,* 3 Dickinson (48 N. J. Eq.) 208. But Sir William Grant explained them as proceeding upon the ground that the plaintiff was less guilty than the defendant. *Osborne* v. *Williams,* 18 Ves. 379, 382. And *Morris* v. *McCullock* can hardly be

reconciled with his decision in *Thomson* v. *Thomson*, 7 Ves. 470, or with the current of later authorities.

The general rule, in equity, as at law, is *In pari delicto potior est conditio defendentis;* and therefore neither party to an illegal contract will be aided by the court, whether to enforce it or to set it aside. If the contract is illegal, affirmative relief against it will not be granted, at law or in equity, unless the contract remains executory, or unless the parties are considered not in equal fault, as where the law violated is intended for the coercion of the one party and the protection of the other, or where there has been fraud or oppression on the part of the defendant. *Thomas* v. *Richmond*, 12 Wall. 349, 355; *Spring Co.* v. *Knowlton*, 103 U. S. 49; Story Eq. Jur. § 298.

While an unlawful contract, the parties to which are *in pari delicto*, remains executory, its invalidity is a defence in a court of law; and a court of equity will order its cancellation only as an equitable mode of making that defence effectual, and when necessary for that purpose. Adams on Eq. 175. Consequently, it is well settled, at the present day, that a court of equity will not entertain jurisdiction to order an instrument to be delivered up and cancelled, upon the ground of illegality appearing on its face, and when, therefore, there is no danger that the lapse of time may deprive the party to be charged upon it of his means of defence. Story Eq. Jur. § 700 *a*, and cases cited; *Simpson* v. *Howden*, 3 Myl. & Cr. 97; *Ayerst* v. *Jenkins*, L. R. 16 Eq. 275, 282.

When the parties are *in pari delicto*, and the contract has been fully executed on the part of the plaintiff, by the conveyance of property, or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract. *Thomas* v. *Richmond*, above cited; *Ayerst* v. *Jenkins*, L. R. 16 Eq. 275, 284. For instance, property conveyed pursuant to a contract made in consideration of the compounding of a crime, and the stifling of a criminal prosecution, and therefore clearly illegal, cannot be

recovered back at law, nor the conveyance set aside in equity, unless obtained by such fraud or oppression on the part of the grantee, that the conveyance cannot be considered the voluntary act of the grantor. *Worcester* v. *Eaton*, 11 Mass. 368, and 13 Mass. 371; *Atwood* v. *Fisk*, 101 Mass. 363; *Bryant* v. *Peck & Whipple Co.*, 154 Mass. 460; *Williams* v. *Bayley*, L. R. 1 H. L. 200; *Jones* v. *Merionethshire Society*, 1892, 1 Ch. 173, 182, 185, 187.

In the case at bar, the contract by which the plaintiff conveyed its railroad and franchise to the defendant for a term of nine hundred and ninety-nine years was beyond the defendant's corporate powers, and therefore unlawful and void, of which the plaintiff was bound to take notice. The plaintiff stood in the position of alienating the powers which it had received from the State, and the duties which it owed to the public, to another corporation, which it knew had no lawful capacity to exercise those powers or to perform those duties. If, as the plaintiff contends, the contract was also beyond its own corporate powers, it is certainly in no better position. In either aspect of the case, the plaintiff was *in pari delicto* with the defendant. The invalidity of the contract, in view of the laws of which both parties were bound to take notice, was apparent on its face. The contract has been fully executed on the part of the plaintiff by the actual transfer of its railroad and franchise to the defendant; and the defendant has held the property, and paid the stipulated consideration from time to time, for seventeen years, and has taken no steps to rescind or repudiate the contract.

Upon this state of facts, for the reasons above stated, the plaintiff, considered as a party to the unlawful contract, has no right to invoke the assistance of a court of equity to set it aside. And so far as the plaintiff corporation can be considered as representing the stockholders, and seeking to protect their interests, it and they are barred by laches. *Harwood* v. *Railroad Co.*, 17 Wall. 78; *Graham* v. *Birkenhead &c. Railway*, 2 Hall & Twells, 450; *S. C.* 2 Macn. & Gord. 146; *Ffooks* v. *Southwestern Railway*, 1 Sm. & Gif. 142, 164; *Gregory* v. *Patchett*, 11 Law Times (N. S.) 357.

This case is not like those in which the defendant, having abandoned or refused to perform the unlawful contract, has been held liable to the plaintiff, as upon an implied contract, for the value of what it had received from him and had no right to retain. *Spring Co.* v. *Knowlton*, 103 U. S. 49; *Logan County Bank* v. *Townsend*, 139 U. S. 67, and cases there cited.

But the case is one in which, in the words of Mr. Justice Miller in a case often cited in this opinion, the court will not disturb the possession of the property that has passed under the contract, but will refuse to interfere as the matter stands. *Pennsylvania Railroad* v. *St. Louis, Alton & Terre Haute Railroad,* 118 U. S. 290, 316, 317. See also *Union Trust Co.* v. *Illinois Midland Co.,* 117 U. S. 434, 468, 469; *Central Transportation Co.* v. *Pullman's Car Co.,* 139 U. S. 24, 56, 57, 61.

*Decree affirmed.*