(105 So. 794)

No. 26833.

## VILEY v. WALL et al.

(Oct. 6, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Appeal and error ☞1201 (7)—Striking out interventions filed first on second trial because untimely held error.**

Under Code Prac. art. 391, only limitation on right to intervene, is that intervention must not retard main suit, and *held*, after remand of case by Supreme Court for second trial, it was error to strike out interventions of persons interested, on ground that they were untimely, where intervention was filed more than five months before case assigned for trial, and the delay in hearing of motion to strike until after assignment of cause was not the fault of intervener.

**2. Corporations ☞212—Evidence held insufficient to establish conspiracy to give fraudulent mortgage.**

In action by stockholder to annul corporate mortgage, evidence, relating only to transactions and matters occurring more than year before execution of mortgage, *held* insufficient to establish conspiracy between directors and mortgagee to give fraudulent mortgage.

**3. Corporations ☞212—Evidence held to show full consideration for alleged fraudulent mortgage.**

Evidence, as to disposition of proceeds, *held* to show consideration for alleged fraudulent mortgage of oil company's property.

**4. Corporations ☞477(1) — Proof of lack of necessity for mortgage will not affect its validity vel non.**

Proof of balance to corporation mortgagor's credit and lack of necessity for mortgage will not affect validity vel non of mortgage.

**5. Corporations ☞204 — Stockholder, setting up ultra vires act of corporation, cannot assert greater rights than corporation itself.**

Stockholder, setting up ultra vires act of corporation, cannot assert greater rights than corporation itself.

**6. Corporations ☞388(4) — Stockholder held estopped to attack mortgage as ultra vires.**

Stockholder, failing to establish conspiracy to give fraudulent mortgage on corporation property, or nonreceipt of sum of mortgage, *held* estopped to attack transaction as ultra vires.

**7. Appeal and error ☞1177(3) — Error in striking interventions held not to require remanding in view of affirmance of judgment favorable to interveners.**

Error, in striking out interventions, *held* not to require remanding of case, where judgment favorable to interveners was affirmed.

Appeal from Thirteenth Judicial District Court, Parish of Grant; L. L. Hooe, Judge.

Action by Leland P. Viley against Donald F. Wall and others, wherein the Bank of Colfax and another filed interventions. From a judgment dismissing intervention and favorable to defendants, plaintiff and interveners appeal. Judgment avoided, in so far as it dismissed interventions, otherwise affirmed.

Wiley R. Jones, of Colfax, for plaintiff.

Palmer & Hardin and J. Fair Hardin, all of Shreveport, and White, Holloman & White, of Alexandria, for defendants and interveners.

BRUNOT, J. The plaintiff is a stockholder in the Three Rivers Oil Company, a corporation organized under the laws of Delaware, but doing business in Louisiana.

During the month of June, 1917, this corporation acquired, subject to a mortgage thereon, about 3,700 acres of land situated in Grant parish, La., known as the Bynum plantation, and a lease on 17 acres of land in Caddo parish, La. The company conducted farming operations on the Bynum plantation and brought in a producing oil well on the leased land in Caddo parish.

On March 6, 1920, the corporation mortgaged its assets, including its real estate, lease, oil well, etc., to Donald F. Wall, for $45,000. No part of this indebtedness was paid at its maturity, the mortgage was foreclosed, the property sold, and Donald F. Wall bid it in and thus acquired title to it.

This suit is to annul that mortgage, to

avoid the sale thereunder, and to have the inscriptions thereof canceled from the mortgage and conveyance records of Grant parish. The suit was filed September 7, 1921. From an adverse judgment, plaintiff appealed and prosecuted the appeal before this court in 1923. Mr. Justice Dawkins handed down the opinion in the case, and therein may be found a concise and accurate statement of the pleadings. This court definitely disposed of the exception of no cause of action and of all pleas filed, except a plea of estoppel, which plea had been referred to the merits, and remanded the case for further proceedings. The concluding paragraph of the opinion on the merits and the decree are as follows:

"We shall not attempt to review each ruling upon the admission of the evidence, but shall remand this case, with instructions to the lower court to permit the introduction of any and all evidence which may throw any light upon the bona fides of this whole matter, from its inception to the present. For the reasons assigned, the judgment appealed from is annulled, and set aside, and this case is hereby remanded to the lower court, with instructions to admit all relevant evidence bearing upon the charge of conspiracy, as well as the bona fides and legality of the alleged mortgage and sale, including an examination of all books and records which may throw any light upon the issues of this case." 154 La. 221, 97 So. 409.

After the case had been remanded, while the court was not in session in Grant parish, but upon orders obtained from the presiding judge thereof, the defendants, Donald F. Wall and Three Rivers Oil Company, filed supplemental answers, and the Bank of Colfax and Mrs. Anna H. Walter filed interventions. The presiding judge then recused himself and appointed Leven L. Hooe to try the case. Subsequently plaintiff moved to vacate the order directing the filing of the supplemental answers and interventions. This motion was submitted on briefs, it was sustained, and the court ordered that the amended answers and interventions be stricken out. To this ruling, the defendants and interveners excepted.

The interveners reserved a formal bill of exceptions, and, with leave of court, made the supplemental answers and interventions a part of the bill. Defendants and interveners then separately moved the court for a new trial on the motions to strike out. The motions for a new trial were overruled, and the case was assigned for a trial on the merits. The court was occupied six days in taking the testimony and, after the case was closed, but before argument, the defendants filed the following plea of estoppel:

"Into court, through their undersigned counsel, come now the defendants in the above numbered and styled cause, and file a plea of estoppel as follows:

"1. That alleging himself to be a stockholder in your defendant company, the Three Rivers Oil Company, plaintiff is thereby estopped from attacking the validity of the incorporation or existence of said company in Louisiana, or any other state, and this estoppel your defendants urge and plead.

"2. Your defendants further aver that, since the evidence shows that it and its stockholders have actually received the proceeds of the mortgage herein attacked, and have applied the same to its benefit and the payment of its debts, that plaintiff herein, who alleges himself to be a stockholder, is estopped to assert the invalidity of the mortgage here attacked, and especially unless the defendant company, or its stockholders, return the sum of money secured by this mortgage, which has not been done.

"Wherefore, they pray, in the alternative, that this plea of estoppel be maintained and plaintiff's suit dismissed at his cost, and his demands rejected."

The case was then argued, submitted, and taken under advisement, and subsequently the following judgment was rendered:

"This cause coming on for trial pursuant to assignment, by reason of the law being in favor of the plaintiff and against the interveners, the Bank of Colfax and Mrs. Anna H. Walter, on the exceptions filed by plaintiff to the effect that said interventions were filed too late, It is ordered, adjudged, and decreed that said exceptions be sustained and the said interventions dismissed as in case of nonsuit, at the cost of interveners, with reservation of the rights of each of said interveners to prosecute their

claims by separate suits; and by reason of the law and the evidence being against the plaintiff, Leland P. Viley, and in favor of the defendants, Donald F. Wall and Three Rivers Oil Company, it is further ordered, adjudged, and decreed, that the demands of plaintiff, Leland P. Viley, be and they are hereby rejected at his cost."

From this judgment, the plaintiff and both interveners appealed, the plaintiff appealing from the judgment rejecting his demands and the interveners from the judgment dismissing their interventions.

No reasons are assigned for judgment, and the minutes do not disclose that the court passed upon the plea of estoppel filed by defendants after the testimony was finally closed.

[1] At the inception of the second trial, the entire record of the first trial was, by agreement of counsel, offered as a part of the pleadings, evidence, etc., in the case, and as it is now presented to us the record is ponderous and the briefs voluminous. Exceptions were noted and bills reserved to a great many rulings admitting or excluding evidence during the trials, and counsel, in their briefs, direct this court's attention to them. For reasons which will hereinafter appear, we do not consider it necessary to review these rulings. We will say, however, that in our opinion, the interventions of the Bank of Colfax and Mrs. Anna H. Walter should not have been dismissed. Interveners are directly interested in sustaining the validity of the mortgage and sale thereunder, which are attacked in this suit. It is admitted that these parties could have intervened in the first suit, and from the judgment rendered by the lower court it appears that the interventions were dismissed because, in the opinion of the judge, they were not filed timely. The record discloses that the order authorizing the filing of the interventions was obtained and the petitions were filed on August 9, 1923. The case was not assigned for trial until January 18, 1924. More than five months elapsed between these dates. After such a length of time it would require a showing of some act or such laches on the part of interveners as would have the effect of retarding the suit, to justify the dismissal of the interventions, for the reason given in the judgment.

There is no such showing. The record discloses that the interventions were filed August 9, 1923. Plaintiff did not file his motions to strike them out until October 8, 1923. No effort appears to have been made by plaintiff to have these motions heard or submitted to the court until November 22, 1923, and the court did not pass upon them until January 7, 1924. It is apparent that interveners are not chargeable with these delays. Plaintiff's counsel, however, contends:

"That no new pleadings can be filed in a cause remanded from the Supreme Court to the lower court for further proceedings unless the express right to so file them is reserved in the judgment of remand."

He cites nine decisions of this court in each of which the right to amend the pleadings was reserved to the litigants in the judgment remanding the case. He also directs the court's attention to Meyer v. Pritchett, 8 Orleans App. 51, and In re Quaker Realty Co., 127 La. 213, 53 So. 526, and says:

"We can find no case reported in our jurisprudence which allows or permits new pleadings on remand, unless this right is expressly reserved in the judgment of the Supreme Court remanding the case."

We think plaintiff is in error, and that the authorities cited have no application to the point raised. It is our opinion that the true rule is stated in Eskridge v. Farrar, 34 La. Ann. 709. In that case the court said:

"Under a decree remanding a cause to be tried anew without limitation as to the scope of the new trial, the judge a quo did not err in ruling that the case was open on all issues, whether original or supplemental."

The judgment remanding this case did not limit the scope of the new trial. It ordered a wide open hearing and authorized a drag-

-net search for evidence, not only upon the charge of conspiracy, but also as to the bona fides and legality of the mortgage and sale which plaintiff seeks to avoid and set aside.

The only limitation on the right to intervene is that the intervention must not retard the main suit.

"One may intervene either before or after issue has been joined in the cause, provided the interventions do not retard the principal suit; the person intervening must be always ready to plead or to exhibit his testimony, because he has always his remedy by a separate action to vindicate his rights." C. P. art. 391.

With respect to the time of filing interventions, this court has held that an intervention is not timely if filed after judgment. It is not timely if filed after the trial has commenced. Lincoln Fearing & Co. v. Ball's Executor, 6 La. 690. It is not timely if filed on the day of trial. Smith v. Strickland, 19 La. Ann. 118. But the court has never held that an intervention is too late, if it be filed a reasonable time before the trial or before the assignment of the case for trial.

[2] We have devoted several days to a second careful reading of the voluminous record in this case. There is a great deal of evidence of irregularities and loose management in the conduct of the business and affairs of the Three Rivers Oil Company by its officers and directors, and plaintiff's brown brief is devoted largely to a discussion of 31 specific instances which he contends establish the fraud and conspiracy charged in his petition. These instances consist of letters between persons who are not parties to this suit, of circulars, of entries in the books of the Three Rivers Oil Company, of sales of stock, etc., on various dates between February 6, 1917, and April, 1919. All of these transactions occurred a year or more prior to the date of the mortgage he is attacking, and in no instance does the evidence disclose any connection between them and the mortgagee. This disposes of plaintiff's charge that there was a cabal and conspiracy between the directors and the mortgagee to place a fraudulent mortgage upon the property of the company.

[3] The charge that there was no consideration for the mortgage is refuted by proof of full consideration. The mortgage was for $45,000. The mortgage notes were three in number; one for $25,000, and two for $10,000 each. The defendant, Donald F. Wall, loaned the mortgagor $25,000, and was the holder and owner of the $25,000 mortgage note. The mortgagor owed the Bank of Colfax about $14,000, and one of the $10,000 mortgage notes was applied to a partial liquidation of this indebtedness. Mrs. Anna H. Walter loaned the mortgagor $10,000 and was the holder and owner of the other note. A. B. Walter testified (vol. 2, p. 313, of the transcript in No. 26833) that the proceeds of the $10,000 note held by Mrs. Anna H. Walter was paid into the treasury of the company. Inasmuch as Mrs. Anna H. Walter is the wife of the witness, we have searched the record, in vain, to ascertain if his testimony on this point was contradicted.

The testimony discloses that the sum of the mortgage was disposed of by the mortgagor as follows: $3,500 was applied to the payment of debts of the mortgagor in Kansas City; $15,975 was applied to the liquidation of a note due the Farley State Bank; $10,000 was applied to the partial liquidation of mortgagor's indebtedness to the Bank of Colfax; $5,525 was credited to mortgagor in the Bank of Colfax, and $10,000 was paid into the treasury of the mortgagor, Three Rivers Oil Company.

Plaintiff's petition alleges that no resolution authorizing the mortgage was passed by the directors. The resolution and the minutes of the directors' meeting at which it was adopted are in the record. The validity of the resolution is also attacked. We think this contention is adversly disposed of by the testimony of Dr. Koogler, E. R. McCormick,

A. B. Walter, J. W. Breyfogle, R. B. Caldwell, and F. T. Wall.

[4] Plaintiff alleges that there was no necessity for the mortgage; that mortgagor had a large balance to its credit. No direct evidence was offered to support this allegation. On the contrary, the testimony shows that when the mortgage was executed, the mortgagor was heavily involved. It owed E. R. McCormick, $15,000; Dr. Koogler, $1,215; the Bank of Colfax, $14,000, and the Farley State Bank, $15,975. If plaintiff had successfully shown that mortgagor had a balance to its credit that fact could not have affected the validity vel non of the mortgage.

Plaintiff alleges that the minority stockholders offered to pay the mortgage and redeem the property. We do not find any evidence in the record to support this allegation. The mortgage was not paid off, and there is no proof in the record that any part of the sum secured by the mortgage has been returned or tendered to the mortgagee.

We have found it unnecessary to refer to other allegations of the petition or to review, in detail, the great mass of documentary evidence and oral testimony in the record, because it is our conclusion that, if the evidence failed to establish that the mortgage and sale attacked was the result of a conspiracy between the officers and directors of the Three Rivers Oil Company and the mortgagee to perpetrate a fraud to the prejudice of the company and its stockholders, and, if the evidence establishes the fact that the Three Rivers Oil Company actually received the sum of the mortgage and applied the money to its own uses, the plea of estoppel filed by defendants at the conclusion of the trial is well founded and should be sustained.

Plaintiff contends that he cannot be estopped for want of tender, because he has alleged conspiracy and fraud. This is true to the extent that under this plea plaintiff could not be estopped from proving that allegation, but allegation is not proof, and when the case is closed and it is found that he has failed to establish the alleged fact, quite a different situation is present, and the plea of estoppel may be invoked.

Plaintiff, as a stockholder of the Three Rivers Oil Company, is asserting as ultra vires a transaction of that company which has not been repudiated by it and the benefits of which it has received and applied to its own uses.

"Under the rules generally applicable with reference to the right to assert the ultra vires character of a transaction, and subject to the same differences of opinion, the corporation or its stockholders may be estopped to deny the validity of a corporate mortgage, as by the acceptance and retention of the benefits of the mortgage." C. J. 14A, § 2674, p. 671, and authorities cited.

[5] As a stockholder, the plaintiff can assert no greater right than may be pleaded by the corporation itself.

"'A corporation, when sued, cannot set up ultra vires as a defense to an action for breach of contract, or even for specific performance, when it has had the full benefit of the contract and the other party has duly performed it.' * * * In some instances the phraseology employed by courts which apply the doctrine is so general as merely to suggest by implication the conception of an estoppel. Thus, we find such statements as these; that 'there is no rule of law which permits the defendant to retain both the benefits and the price'; that 'in equity neither party to an ultra vires transaction will be heard to allege its invalidity while retaining its fruits'; that, 'in order to be relieved of the burden which it has voluntarily assumed, the offending corporation must restore what it has received.' * * * These forms of statement, it is clear, are especially appropriate in respect to cases in which the corporation is seeking as plaintiff to be released from the contract." L. R. A. 1917A, pages 826–827 and authorities there cited.

The rule just stated is judicially enforced in all jurisdictions in which the doctrine of estoppel is applied. In those jurisdictions which reject the doctrine of estoppel, restoration is enforced by an action independent of the contract.

[6] Having reached the conclusion that plaintiff is estopped to attack the bona fides of the mortgage and sale thereunder except upon the grounds of conspiracy and fraud and the nonreceipt of the sum of the mortgage, and having found that the evidence in the record does not establish either ground, we consider all other issues presented by the pleadings as merely incidental thereto and an independent consideration of them now would be a vain and futile task.

In Equitable Trust Co. v. Washington-Idaho Water, Light & Power Co. (D. C.) 300 F. 601, a case in many respects similar to the one before us, the court said:

"Many interesting questions have been presented, both in oral argument and in briefs, touching the issue thus presented, but in view of my conclusions with reference to certain aspects of this matter many of them need not be discussed. The interveners are seeking no affirmative relief of their own, but ask only that foreclosure of the mortgage be denied on the ground that it is ultra vires and void, and they justify their advent into the case by showing that the company, because of fraud and collusion, had refused to appear and defend the action. When stockholders, either common or preferred, thus intervene in a cause, they stand in the shoes of the corporation, and can assert only such rights and interpose only such defenses as are open and available to the corporation itself. In the case of Dickerman v. Northern Trust Co., 176 U. S. 181, 20 S. Ct. 311, 44 L. Ed. 423, the question was whether a minority of the stockholders of a corporation have a right to intervene in the foreclosure of a mortgage upon the corporate property for the purpose of showing that the property was sold to the corporation by connivance of the mortgagees at a gross overvaluation, and to compel the bonds held by them to be subjected to a set off of the indebtedness to the corporation for unpaid stock. Mr. Justice Brown, speaking for the court, said:

"'It should be borne in mind, in connection with the several defenses set up by the interveners, that they do not appear here in the capacity of creditors, but as stockholders; that their rights are the rights of the corporation, and must be asserted and enforced through the corporation, and upon the theory that the latter has or threatens, by collusion or otherwise, to neglect the proper defense of the foreclosure suit.'

"Many cases are cited in support of the proposition thus announced. In Big Creek Gap Coal & Iron Co. v. American Loan & Trust Co., 127 F. 625, 62 C. C. A. 351, Lurton, Severens and Richards sitting, this doctrine was approved and applied in a case almost identical with the case in hand. In that case preferred stockholders intervened for the purpose of contesting the validity of a mortgage then in the course of foreclosure upon the ground that its execution was ultra vires, and had not been authorized at any stockholders' meeting lawfully called and held. In the course of the opinion the court said:

"'The right of minority stockholders of a corporation to intervene in a foreclosure suit when the corporation threatens, by collusion or otherwise, to neglect the proper defense of the suit, is established by a line of decisions (citing cases); but, when they intervene, they do so, not as individuals, but as stockholders, in the assertion of rights common to the stockholders, which the corporation itself has declined to protect. Dickerman v. Northern Trust Co., 176 U. S. 181, 188, 20 S. Ct. 311, 44 L. Ed. 423. In the present case, where the interveners seek no affirmative relief of their own in the rescission of the agreement by which they acquired their preferred stock, but ask only that a foreclosure be denied on the ground that the mortgage, for different reasons, was invalid and void, they must stand upon the rights open to the corporation itself.'

"In applying this doctrine to the facts of that case (p. 635 [62 C. C. A. 361]) this language is employed:

"'As the court below suggested, and as we have pointed out, the interveners could make no defense not open to the corporation, and the corporation, having executed the mortgage and issued the bonds, and obtained in exchange money and property which it has since held and treated as its own, is estopped now from saying that what it did do was not done in the right way. * * * Since the corporation has enjoyed the fruits of the transaction, and the parties cannot now be replaced in the position they were before the bonds were issued, it is obviously too late to impeach the transaction on the ground of irregularity.'

"The interveners here are seeking relief against an alleged fraud and wrong practiced upon them as individual shareholders, as distinguished from the corporation itself. Whatever rights the interveners have or may have had in the premises, it seems plain that such rights cannot find recognition or expression in this character of proceeding. Their individual wrongs or injuries cannot be asserted here, for the purpose of influencing the result of the

foreclosure proceeding. The soundness of this position becomes patent, when one pauses to consider what would be the result or effect if the interveners should be permitted to successfully interpose the defense upon which they rely. * * *

"We must not lose sight of the distinction between the doing by the company of an act beyond the scope of the powers granted to it by law, and the irregularity in the exercise of its granted powers, nor must we overlook the rule that, when a corporation is acting within the general scope of the powers conferred upon it by law, it may be estopped to deny that it has complied with the legal formalities which are prerequisite to the validity of the action taken by it. That the Washington-Idaho Company is estopped to assert the invalidity of the notes and mortgage, while retaining the benefits of the executed transaction, seems too plain to require extensive discussion. The following cases will be sufficient to sustain the correctness of that conclusion: Louisville, etc., Railway Co. v. Louisville Trust Co., 174 U. S. 552, 19 S. Ct. 817, 43 L. Ed. 1081; St. Louis, Vandalia, etc., Co. v. Terre Haute & Indianapolis Railroad Co., 145 U. S. 393, 12 S. Ct. 953, 36 L. Ed. 748; Shafer v. Spruks, 225 F. 480, 140 C. C. A. 504; Sioux City Terminal, etc., Co. v. Trust Company of North America, 82 F. 124, 27 C. C. A. 73. Buhl Independent School District v. Neighbors of Woodcraft (C. C. A. 9) 289 F. 196; Big Creek Gap Coal & Iron Co. v. American Loan & Trust Co., supra; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 921.

"In Louisville, etc., Railway Co. v. Louisville Trust Co., supra, it is said:

"'One who takes from a railroad or business corporation, in good faith, and without actual notice of any inherent defect, a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation could, by any action of its officers or stockholders, or of both, have authorized the execution and issue of the obligation. * * * The records of the railroad corporation and of its board of directors, which would naturally show whether such a petition had or had not been filed, were private records, which a purchaser of the bonds was not obliged to inspect, as he would have been if the fact had been required by law to be entered upon a public record.'

"The burden of proof was on the interveners to negative the bona fides of the original holders of the notes, and no evidence was introduced at the trial having any such effect. The mere failure to have the written request of the preferred stockholders or to make an appraisement of the property as provided in the amended articles, in the absence of a showing that the original holders had knowledge of such failure, especially in view of the provisions of the notes themselves, did not render the title of such holders defective or shift the burden of proof. Hotchkiss v. National Bank, 21 Wall. (88 U. S.) 354, 22 L. Ed. 645; Murray v. Lardner, 2 Wall. (69 U. S.) 110, 17 L. Ed. 857; First National Bank v. Moore, 148 F. 953, 78 C. C. A. 581; Santa Marina Co. v. Canadian Bank, 254 F. 391, 165 C. C. A. 611; Young v. Lowry, 192 F. 825, 113 C. C. A. 149; Washington & Canonsburg Ry. Co. v. Murray, 211 F. 440, 128 C. C. A. 112; 3 Ruling Case Law, p. 1037, §§ 240, 242, 243 and 244; 8 Corpus Juris, 983, 984.

"I conclude that the attack upon the entire note issue and mortgage given in security of it cannot be upheld."

In the case of St. Louis Railroad v. Terre Haute Railroad Co., 145 U. S. 407, 408, 12 S. Ct. 957, 36 L. Ed. 748, Mr. Justice Gray, as the organ of the court, says:

"When the parties are in pari delicti, and the contract has been fully executed on the part of the plaintiff, by the conveyance of property, or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract. Thomas v. Richmond [12 Wall. 349, 20 L. Ed. 453] above cited; Ayerst v. Jenkins, L. R., 16 Eq., 275, 284, * * * The contract has been fully executed on the part of the plaintiff by the actual transfer of its railroad and franchise to the defendant; and the defendant has held the property, and paid the stipulated consideration from time to time, for seventeen years, and has taken no steps to rescind or repudiate the contract.

"Upon this state of facts, for the reasons above stated, the plaintiff, considered as a party to the unlawful contract, has no right to invoke the assistance of a court of equity to set it aside. And so far as the plaintiff corporation can be considered as representing the stockholders, and seeking to protect their interests, it and they are barred by laches. Harwood v. Railroad Co., 17 Wall. 78 [21 L. Ed. 558]; Graham v. Birkenhead, etc., Railway, 2 Hall & Twells, 450. S. C. 2 Macn. & Cord. 146.

Ffooks v. Southwestern Railway, 1 Sm. & Gif. 142, 164. Gregory v. Patchett, 11 Law Times (N. S.) 357."

[7] For these reasons, we are of the opinion that the plea of estoppel is well founded and should have been sustained, but inasmuch as the judgment of the lower court rejects plaintiff's demands and dismisses the suit at his cost, we realize that, as between our views and those of the district judge, in so far as they relate to the demands of defendants, there is a distinction without a difference in results. The dismissal of the interventions was an error, but a remand of the case for that reason is not necessary. The judgment appealed from is therefore avoided in so far as it dismisses the interventions of Mrs. Anna H. Walter and the Bank of Colfax, and in all other respects it is affirmed at plaintiff's cost.