ROGERS, J.
 

 The receiver of the Shreveport Brick Company, Inc., in his first quarterly account recognized the City Savings Bank & Trust Company as a privileged creditor for $68,415.21, secured by pledge of a mortgage note of $100,-000 bearing on certain property of the brick
 
 *474
 
 company in the city of Shreveport. The brick company and one Morris Anisman, holding a note of the brick company for $17,460.-20, opposed the account. Both opponents attacked the pledge of the $100,000 mortgage note on the grounds: First, that the execution of the note was authorized solely for the purpose of effecting a loan for the specific sum of $100,000 thereon, and not for the purpose of being used as general collateral security; and, secondly, that the brick company .is entitled to a credit of $26,600 by reason of the alleged substitution in May, 1926, of notes of the brick company for notes of the Roberts Lumber Company and the Cox-Roberts-Bellows Motor Company whereby the brick company assumed and later paid the indebtedness of the other two corporations, which was unauthorized, ultra vires, null, and void. The opponent Anisman also pleaded prescription of five years liberandi causa to the note for $100,000 and the mortgage securing it.
 

 The bank filed a plea of estoppel, alleging, in substance, that the brick company was, in effect, a one-man corporation, owned almost exclusively and completely dominated and controlled by T." G. Roberts, its president and general manager. That the brick company and its directors, who weré mere dummies of Roberts, permitted Roberts to borrow from the bank to the same extent as if he had been invested with full discretionary power. That the bank had for a number of years extended large credits to the brick company on the strength of the acts complained of by opponents, of which credits the brick company had received the befiefit. That by the silence and inaction of the brick company and its directors the bank was restrained from demanding and enforcing payment of its obligations from Roberts, the indorser on the notes, and the various corporations owned and controlled by him.
 

 The court below overruled the oppositions and the plea of prescription, sustained the bank’s plea of estoppel and homologated the receiver’s account. From this judgment both opponents appealed.
 

 Opponents contend that the bank, with full knowledge, took the notes of the brick company signed by Roberts, its president, in liquidation of the notes which it held of the lumber company and the motor company. Per contra, the bank contends that there was no substitution of obligations. That at the solicitation of Roberts it merely lent the brick company enough money to enable it, in turn, to lend the lumber company and the motor company the money required to discharge their notes.
 

 We find from our examination of the evidence that the contention of the bank is correct. The transaction was first handled by the bank as a rediscount proposition with the lumber company and the motor company, and, later, as a direct loan to the brick company of an equal amount.
 

 The boards of directors of all the corporations — the brick company, lumber company, and motor company, as well as the Acme Sand Corporation, through which a part of the transaction relative to the motor company was handled — were composed of the same persons, viz.: T. G. Roberts, his confidential secretary for a number of years, Mrs. L. M: McCormack, and his personal friend and business associate of long standing, E. C. Bartlett. Roberts owned practically all the capital stock of these corporations, and unquestionably dominated and managed their affairs.
 

 Roberts, Mrs. McCormack, and Bartlett were the sole stockholders as well as the sole directors of the brick company; Roberts owning 1,920 shares, Bartlett owning 50 shares, and Mrs. McCormack owning 25 shares. Of
 
 *476
 
 these 1,995 shares, 975 shares were apparently issued without value received.
 

 The evidence clearly shows that Bartlett and Mrs. McCormack abandoned and turned over the conduct, management, and control of the brick company to Roberts, who solely and entirely directed the affairs and managed the business of the corporation. In these circumstances, it will be presumed that Roberts was authorized to do in the name of the brick company whatever that company might lawfully do and no special authorization or ratification of his acts need be shown. Phoenix Land Co. v. Exall (Tex. Civ. App.) 159 S. W. 474, 475; Tourtelot v. Whithed, 9 N. D. 467, 84 N. W. 8; American National Bank v. Wheeler-Adams Auto Co., 31 S. D. 524, 141 N. W. 396; Garmany v. Lawton, 124 Ga. 876, 53 S. E. 669, 110 Am. St. Rep. 207; Park Addition Co. v. Bryan, 102 Okl. 205, 228 P. 959; Berlin v. P. L. Gusaehs, 114 La. 744, 38 So. 539; Mayville Canal Co. v. Lake Arthur Rice Milling Co., 119 La. 447, 44 So. 260; Crusel v. Houssiere-Latreille Oil Co., 122 La. 913, 48 So. 322; Pace & Co. v. Alexandria Electric Rys. Co., 138 La. 879, 70 So. 867; Du Pont de Nemours & Co. v. Capital City Oil Co., 146 La. 720, 84 So. 31; Haas v. S. Gumbel & Co., 155 La. 414, 99 So. 350; Gueydan v. T. P. Ranch Co., 156 La. 397, 100 So. 541. Eyen if it be conceded that the transac tions with the bank were ultra vires on the part of the brick company, nevertheless, they were fully completed, the sole stockholders and directors acquiescing therein, and the law will leave the parlies where it finds them. Tourtelot v. Whithed, supra; Memphis Lumber Co. v. Security B. & T. Co., 143 Tenn. 136, 226 S. W. 182; First National Bank of Xenia v. Stewart, 107 U. S. 676, 2 S. Ct. 778, 27 L. Ed. 592; Fletcher Cyc. Corps., Vol. 3, pars. 1516, 1520, 1559; Id., 124, 1924 Supplmt. Vol. II, pars. 1520, 1557, 1559 and 1574; Canal & Claiborne R. Co. v. St. Charles St. Ry. Co., 44 La. Ann. 1069, 11 So. 702; Atkins v. Shreveport & Red River Valley Ry. Co., 106 La. 568, 31 So. 166; Viley v. Wall, 159 La. 627, 105 So. 794.
 

 The opponent Anisman is also a close personal friend and business associate of T. G. Roberts. The note on which he bases his opposition was issued by the brick company on March 9, 1927,
 
 long
 
 after the transactions of which oxjponent complains were executed. Anisman acquired the note from the liquidators of the Victory Gravel Company, one of the many corporations of T. G. Roberts. This was on or about December 14,1928, and Anisman filed his opposition to the receiver’s account on January 22, 1929. So that it is manifest Anisman acquired the note for the purpose of Joining in the present litigation. In these circumstances, Anisman’s standing to attack the transactions between the bank and the brick company might well be questioned. Civ. Code, arts. 1970, 1993; Meche v. Lalamie, 30 La. Ann. 1136; Byrne & Co. v. Their Creditors, 33 La. Ann. 198. But, be that as it may, the note, itself, was not prescribed, because prior to the date prescription might have accrued the debt represented by the note was acknowledged and the maturity of the instrument, was extended by the brick company through its president, T. G. Roberts. The fact that there was no specific resolution of the board of directors of the brick company authorizing its president to execute the acknowledgment and extend the note is unimportant, in view of the fact that Roberts exercised the entire functions of the corporation, including executing and renewing notes in its name. Under this condition of things we think that the acknowledgment and extension of the note is binding not only as against the corporation, itself, but also as against any subsequent creditor of the corporation.
 

 For the reasons assigned, the judgment appealed from is affirmed.