EMMONS W. KINGSBURY *vs.* JOSHUA D. SARGENT and another.

Penobscot. Opinion March 18, 1891.

*Attachment. Receipt. Duress. Fraud.*

Where an officer with a writ against one person attaches personal property claimed by another person, the latter is under no duress; and a receipt signed by him, to obtain a release of the property from the officer's custody, can not be avoided for duress.

Where the officer does not undertake to state the terms or conditions of the receipt written by him to be given by the claimant, but only states his opinion of its legal effect, (the claimant having the opportunity to read the receipt, but signing without reading) the receipt can not be avoided on the ground of fraud, even though the officer misstated its legal effect.

ON RERORT.

The case is stated in the opinion.

*Peregrine White,* for defendants.

Receipt void. Ad. Torts, (abridged ed.) pp. 369-373 ; *Pen. Boom Corp.* v. *Wilkins,* 27 Maine, 345.

Representation fraudulently made ; relied on by defendants. Pollock Cont. 477. Defendants not negligent. Damages nominal : *Edmunds* v. *Hill,* 133 Mass. 445 ; *Sawyer* v. *Mason,* 19 Maine, 49.

*G. W. Howe,* for plaintiff.

Counsel cited : 2 Greenl. Ev. § 301 ; *Harmon* v. *Harmon,* 61 Maine, p. 231 ; *Abbott* v. *Treat,* 78 *Id.* p. 126 ; *Severance* v. *Ash,* 81 *Id.* 281.

EMERY, J. On report. The action is assumpsit by an officer against receiptors upon their written receipt for property attached by him on a writ against John D. Sargent, one of the receiptors and husband of Mary Sargent, the other receiptor. The receipt was in the usual form upon a printed blank, with this concluding printed clause : "And we further agree that this receipt shall be conclusive evidence against us as to our receipt of said property, its value before-mentioned, and our liability under all circumstances to said officer for the full sum above mentioned." Judgment was obtained in the suit against Joshua, and execution issued thereon, upon which execution the officer seasonably made demand on the receiptors for the attached property. Delivery was refused. In this action upon the receipt, the defendants under proper pleadings rest their defense solely upon their contention that the receipt was obtained from them by duress or fraud on the part of the officer.

The defendants' evidence, giving it all reasonable effect, amounts to this : The plaintiff, a deputy sheriff, having a writ against Joshua, and having orders to attach thereon the cattle on his farm, waited upon him at his farm for that purpose. Joshua told the officer that the cattle belonged to his wife, who was sick in her chamber from recent child-birth, (the child being two days old,) and asked the officer to go with him to the wife's room, that she might formally forbid the attachment. The officer went with the husband to the wife's room, and there she forbade the attachment, claiming the cattle as her own. The officer replied that he must nevertheless attach the cattle according to his instructions, he having a good bond. He then left the house, and with his assistant began gathering the cattle together to take away. In doing this, there was much shouting at and whipping of the cattle to keep them in place. This disturbed and excited the wife, and her nurse told the husband he must get rid of those men somehow or other. Mr. Sargent spoke to the officer, who advised him to have the cattle receipted for, and the ownership determined. A neighbor, Mr. Frees, was called in, but he declined to sign the receipt. Then all

three went into the house, to the wife's room. The officer there said that if they wanted to keep the cattle .from being driven away, they must sign a receipt for them. The wife at first refused to sign any receipt, declaring she would not give up her claim. The officer said she would not be signing away her claim to the cattle, but only becoming security for them until the ownership could be determined. She then appealed to her husband and her neighbor, Mr. Frees, both of whom advised her to sign it. She thereupon took the paper from the officer and signed it with her husband. She did not read the paper, nor hear it read, and did not know the contents of it. The husband heard it read over after the signing, but did not notice the clause above quoted.

The officer's version is entirely opposed to that of the defendants, but we have no occasion to consider it.

1. As to duress. A comparison of this case with *Harmon* v. *Harmon*, 61 Maine, 227 ; *Higgins* v. *Brown*, 78 Maine, 473 ; and *Hilborn* v. *Bucknam*, 78 Maine, 482, must make it evident that here was no legal duress, such as would avoid the receipt. The officer used no unlawful threats,— exercised no unlawful force. The peculiar circumstances of the wife's illness and weakness made the occasion painful, and the emergency perhaps severe ; but the officer was within the line of his duty. He did not seek the wife, and, indeed, she did not sign at his request, but only after seeking the advice of her husband, and neighbor.

2. As to fraud. In considering this defense, it is to be borne in mind that no fiduciary relation existed between the parties. The defendants from the first regarded the officer as antagonistic. The situation was this : The defendants desired to withdraw the cattle from the custody of the officer. There were several ways open to them. They could pay the debt,— replevy the cattle,— or receipt for them. They could also abandon the cattle, and hold the officer for all damages. They chose to receipt for them. The receipt was prepared and presented to them. No statement was made to them of its contents, or terms. At the most, there was only a statement of an opinion,

that the receipt would not operate in law to estop the wife from asserting her own claim.    Perhaps it would not, had she returned the cattle to the officer, and thus satisfied the receipt. Its terms and contents were fully open to them, however.    It fully stated the obligations they assumed by signing it.    They signed it without duress, and thereby obtained their object, the release of the cattle from the officer's custody.

They can not now, after having attained their purpose, avoid their own reciprocal engagement by showing that they did not read the paper,— did not know its terms,— or were misled by the officer's erroneous opinion as to its legal effect.    They should have re-delivered the property according to their engagement, and having fulfilled that, they would have been relieved. They stipulated, however, that they would not question their liability in an action on the receipt, and by that stipulation they must now abide.

This rule may seem severe upon the weak, thoughtless, or unlearned ; but reflection will satisfy the mind that the rule is essential to the certainty and security of titles, and to the faith and value of contracts. Without such a rule, business could not be carried on.    *Grant* v. *Grant*, 56 Maine, 573 ; *Insurance Co.* v. *Hodgkins,* 66 Maine, 109 ; *Thompson* v. *Insurance Co.* 75 Maine, 55 ; *Abbott* v. *Treat*, 78 Maine, 121 ; *Upton* v. *Tribilcock*, 91 U. S. 50.

By their receipt, the defendants also stipulated that if they did not re-deliver the property, they would pay the value, one hundred and fifty dollars.    By failing to re-deliver the cattle they have now become liable to pay that sum.    Whether or not the wife owned the cattle is immaterial in this action.    Rather than re-deliver the cattle, and pursue such remedies as might then be open before her, she elected to retain the cattle, and thus allow her liability upon the receipt to become fixed. *Penobscot Boom Co.* v. *Wilkins*, 27 Maine, 345 ; *Drew* v. *Livermore*, 40 Maine, 266.    The officer, however, only asks for damages enough to satisfy the execution on the judgment against Joshua, which appears to be $113.07, with interest from

date of judgment, May 12, 1888.   Hence damages will be limited to that amount.

*Judgment for plaintiff.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.