EASTERN RUG AND TRADING CO.

          VS.                                        No. 7568.

HABIB E. HALABY.

May 22d, 1919.

7568

CHARLES F. CLAIBORNE, JUDGE.

This is a suit on two promissory notes; the defense is a plea in compensation.

The plaintiffs allege that they are owners of two promissory notes made by the defendant Habib E. Halaby to the order of plaintiffs both dated New York and both payable at 212 Fifth Avenue, New York; one for $612.71 dated June 12th, 1914 payable six months after date, and the other for $256.25 dated November 12th, 1914 payable ten days after date, - all bearing six per cent per annum interest from date until paid, amounting in principal to $868.96.

The defendant admits making the two notes and that plaintiffs are the owners of them, but pleads compensation. He alleges that the plaintiffs, the Eastern Rug and Trading Company, are indebted to him in the sum of $750 for this: That some time prior to July 2d, 1914 the defendant's brother, Najeeb E. Halaby, was adjudged a bankrupt by the United States District Court for the Northern District of Texas sitting in Dallas; that said bankrupt endeavored to effect a composition of 25 cents on the dollar with his creditors; that all of said creditors, with the exception of plaintiffs herein and H. S. Tavshaniian and S. Telfeyan, signified their intention to accept said composition; that the plaintiffs herein suggested that only on the condition that the defendant herein should pay over to them the sum of $750 on account of their claim against the bankrupt would they acquiesce in the composition, and that upon said payment it would induce Tavshaniian and Telfeyan to acquiesce also; that in order to further the interest of his bankrupt brother and his creditors and being convinced that the extortion proposed by the plaintiffs was the only way in which such composition could be effect-

476

ed and consummated, the defendant did, on July 2d, 1914 pay
over to the plaintiffs herein the sum of $750, "with the un-
derstanding however, that said money would be returned to him
in the event said composition should not be effected and con-
summated"; defendant further alleged "that in exacting and ex-
torting from respondent the sum of $750 as a consideration for
its action in approving the composition offered by respondent's
brother in the bankruptcy proceedings aforesaid and in inducing
H. S. Tavshanian and S. Telfeyan and Company also to approve
said composition, the said Eastern Rug and Trading Company know-
ingly and fraudulently extorted money from respondent as a con-
sideration for acting in the said bankruptcy proceedings, in
direct contravention and violation of the provisions of the Act
to establish a Uniform System of Bankruptcy throughout the United
States, approved July 1st, 1898 and Amendments thereto approved
February 5th, 1903, June 15th, 1906, and June 25th, 1910, res-
pectively, and particularly section 29, subsction b, 5, thereof
which prohibits such extortion and declares it to be a crime,
punishable by imprisonment of not more than two years . . . ;
that said agreement under which he paid over to plaintiffs said
sum of $750, and the payment thereof were, as regards plaintiffs,
prohibited by law and therefore should be set aside and declared
null and void ab initio, and said sum of $750, together with in-
terest at the rate of six per cent per annum from July 2d, 1914
until paid, should be returned to respondent by plaintiffs; in
the event the Court should determine as a matter of law that
said above described agreement and the payment of $750 thereunder
were good, valid, and proper, then and in that event only res-
pondent shows that he is entitled to receive back from plaintiffs
said sum because of want of consideration then, previously, or
thereafter accruing to respondent for said payment, because of
failure of said composition to be effected and consummated";
defendant therefore prayed that the agreement under which he paid
the $750 be declared null and void, that he have judgment against
the plaintiffs for $750, and that there be judgment in favor of
plaintiffs and against respondent for only the difference bet-
ween $868.96 and interest and $750 and interest.

The defendant swore to the truth of all the allegations of his answer.

There was judgment for the plaintiffs as prayed for, and rejecting defendant's plea in compensation.

From this judgment the defendant took a devolutive appeal.

Wm. F. Cramer, President of plaintiff company, testified that the $750 were paid to the plaintiffs for account of themselves, Tavshaniian and Telfeyan to reimburse to them the expenses incurred by John B. Thorn, who had been sent by these three firms from New York to Dallas and New Orleans to investigate the affairs of Najeeb Halaby and his transactions with his brother Habib, the defendant herein; that "on or about September 26th, 1913 N. E. and H. E. Halaby came to our store and N. E. Halaby bought a lot of goods amounting to $8845.09 also $1034.78 of carpets and rugs. Part of which were promptly shipped to him at Dallas, and it was found that these goods were immediately transshipped to New Orleans upon their arrival at Dallas by N. E. Halaby to his brother H. E. Halaby" -; there was not understanding at any time to the effect that this $750 was to be returned in case the composition did not go through, because it never occurred to any one, the creditors consenting, that the composition would not go through; the composition did not go through for the reason that the attorney for the bankrupt withdrew it and the deposit for the composition was not made; the amount paid to Mr. Thorn was $584.41, telegrams $11.12, check to their attorneys C. M. Smithdeal $50 and T. S. Kingman $160.83 making $806.36.

Thomas L. Crawford, is Secretary and Treasurer of the plaintiff company; the creditors of N. E. Halaby amounted to $51323.01 and the amount of the three firms of plaintiff, Tavshaniian and Telfeyan amounted to $23201.63; there was no such understanding that the $750 was to be paid back in case the composition did not go through; the plaintiffs were creditors for $16904.60; they signed the composition; they got two dividends one of 10 and the other of 5%.

John B. Thorn is salesman for plaintiffs; he was in Dallas, Texas when N. E. Halaby was examined in regard to what be-

came of all the rugs, and he stated that he had shipped some of them to his brother in New Orleans; he went to New Orleans to find the brother, and visited Holmes; his expenses in the matter were $584.31 consisting of railroads, hotels and other incidentals from May 13th. when he left New York to June 13th. when he returned; he was sent by the three firms above mentioned.

Ashod H. Tiryakian, manager for Tavshaniian, swears that the allegation that the $750 was exacted for any other purpose than to pay expenses the three firms had incurred is altogether untrue; the $750 was distinctly for the purpose of defraying the expenses that the three firms had incurred in sending their representative to Dallas to report upon the condition of the bankrupt's stock; the attorney for the other creditors was informed of the payment of this $750.00.

Habib E. Halaby, the defendant, testified that the plaintiffs herein were one of the creditors of his brother, Najeeb Halaby, who had gone in bankruptcy in Dallas; he was trying to effect a composition with the creditors at 25 on the dollar; the majority of the creditors accepted the offer; the plaintiffs herein and Tavshaniian and Telfeyan held out; he saw them and "they said that they had sent one of their representatives to Dallas, and the representative has spent a considerable amount of money, amounting to about $750.00 and they feel that if they could get that $750, they will be inclined to accept our composition, or proposition, whatever it is"; he was his brother's representative in New York trying to effect the settlement; he "gave them this money with the distinct understanding, oral, of course, that in case this composition did not go through, or is not effected, that the money would be returned to me?" there was no receipt given; "I just simply trusted them, a gentlemanly agreement"; he thought the composition would go through and there was no necessity for a receipt; the composition fell through on the theory of the referee that if the bankruptcy was settled through the court, that the creditors would get more than 25 per cent; Mr. Cramer, the President, is the name of the party with whom he agreed for a return of the $750; the three firms above mentioned initiated the proceedings against his brother;

"the $750 was to cover what they said were the expenses which they had been put to in investigating and bringing the proceedings;

Q. "Didn't your brother turn over to you before he went into bankruptcy some of the goods that he bought from the Eastern Rug and Trading Co.?

A. That is none of anybody's affairs. That is a transaction between me and him. He owed me money and it don't belong to this case at all.

Q. How long before your brother went into bankruptcy had these goods been turned over to you?

A. I am not going to answer such questions, because this is outside of this case".
the $868.96 represented the price of goods sold to him; plaintiffs voted for the composition.

Plaintiffs' demand for the notes is admitted to be correct, and they are therefore entitled to a judgment for their amount. The only claim in dispute is defendant's plea in compensation.

Section 29 of the Bankrupt Act of 1898, Sec. b 5 provides:

"A person shall be punished by imprisonment for a period not to exceed two years upon conviction of the offense of having knowingly and fraudulently . . . (5) extorted or attempted to extort any money or property from any person as a consideration for acting or forbearing to act in bankruptcy proceedings".

The defendant is driven to this dilemna, either horn of which is destructive of his defense: If plaintiffs' testimony is true, and the payment to them had a valid cause, then defendant cannot recover the amount paid by him, because plaintiffs did what they bargained to do, and voted for the composition, and never agreed to return the money in case the composition was not granted. The obligation so to vote was a sufficient consideration if it was legal; the defendant certainly thought so since he paid it.

If on the other hadn the testimony of the defendant is a correct recital of the real transaction, then, as he alleges and testifies, he paid the plaintiffs a sum of money as a con-

480

sideration for their committing an act denounced by law and punished as a crime. It did not require the fulminating sanction of Congress to stamp such a transaction *with* illegality. The equity Courts of the country had so decided long before. 1 Story Equity & 378; and their conclusion had been adopted by the Supreme Court of our State, 6 N. S., 218; 1 La., 297; 1 R., 454; 5 R., 101; 110 La., 615.

The original bargain was illegal and all stipulations connected with it, including the promise to refund, *were* equally illegal. 17 La., 128; 1 A., 178; 30 A., 207 (211); 13 C. J. 509 & 460; 2 Elliott on Contracts p. 352 § 1078.

From such a contract no cause of action arises either to enforce it or to rescind it; but the law leaves the parties where they have placed themselves; and when they appeal to it, it answers:

"Procul, O! procul este profani,
Conclamat vates totoque absistite luco".35 A., 1173.
"The Temple of Justice of your country is the house of God,
It should not be made a den of thieves".3N.S.46 (48).
C. C., 1893 (1887):
"An obligation . . with an unlawful cause can have no effect".
C. C., 1895 (1889):
"The cause is unlawful when it is forbidden by law &c.".
C. C., 1892 (1886):
"That is considered as morally impossible, which is forbidden by law, or contrary to morals. All contracts having such an object are void".
C. *P*., 19:
"Obligations contrary to Justice, good faith, or good morals, such as those by which a reward is promised to another to commit a crime, give no right of action to either party to enforce the execution of the contract. But if the reward promised has been paid, no action can be brought to obtain the repayment of the amount".

The principle is variously expressed by the words:"Nemo allegans turpitudinem suam audiendus est" and "ex turpi causa

481

non oritur actio".

In Schmidt vs Barker, 17 A., 261 (264), the Court said:

"This court has often held that it will not lend its aid to settle disputes relative to contracts reprobated by law. It will notice their illegality ex officio and allow it without any plea at any stage of the proceedings. Parties cannot be heard who ask relief from a violation of law. The law leaves them where their conduct has placed them and "in pari causa turpitudinis melior est conditio possidentis". 3 N. S. 46; 17 La., 132; 5 R., 101; 12 R., 79; 1 A., 176; 6 A., 317; 7 A., 170; 10 A., 199; 12 A., 166, 249; 15 A., 519; 19 A., 498; 22 A., 105; 24 A.,278; 114 La., 822; 2 H. D., 1007 & 1; 6 Toull. & 126; 11 Baudry-Lac on Obligations Vol. 1 p. 323 & 316 C. Also Vol. 3, 2 de partie p. 1068 & 2839; & on C. N., 1131; 3 Dalloz Codes Annotes on C. N., 1376, 1377 (C.C. 2301); p. 676 & 130; 33 Dalloz Rep. Leg. p. 1200 & 5489, p. 1206 & 5531; Pothier Oblig. p. 31 & 43; 2 Delvincourt p. 472 & 3; 10 Duranton p. 360 & 374; 4 Aubry & Rau p. 741 & 442 Bis; 1 Larombiere & 10 p. 307 on Art. 1133; 15 Am. & Eng. Enc. Law p. 963 & 5, p. 997 XXIV, 999 & 3; 1001(C) St.Louis RRd.vsTerre Haute FRd., 145 U. S. 407; 197 U.S., 245 (295); 1 Story Equity & 298; 13 C. J., 492, 496 & 440; Elliott on Contracts p. 342 & 1066.9.

In Higgins vs. Mc Crea, 116 U.S.,671, the Court said: "We do not see on what ground a party, who says in his pleading that the money which he seeks to recover was paid out for the accomplishment of a purpose made an offense by the law and who testifies and insists to the end of his suit that the contract on which he advanced his money was illegal, criminal, and void, can recover it back in a court whose duty it is to give effect to the law which the party admits he intended to violate". Affirmed in White vs. Barber, 123 U.S. 425.

The Judge of the District Court was evidently guided by these principles in refusing to listen to the defendant; and dismissing his demand. We are of the opinion that his judgment was right and we affirm it.

May 22d, 1919.