**3 A's TOWING COMPANY,**
**Plaintiff-Appellee,**

v.

**P & A WELL SERVICE, INC., etc., Defendant-Third-Party Plaintiff-Appellee,**

v.

**CHEVRON, U. S. A., INC., Third-Party Defendant-Appellant.**

No. 80–3066.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 13, 1981.

Rehearing Denied May 8, 1981.

---

William H. Mouton, Lafayette, La., for third-party defendant-appellant.

S. Gerald Simon, New Iberia, La., for P & A, etc.

Before GEE, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

Chevron appeals from a judgment holding it liable in damages for its cancellation of a service contract. We find no error in the district court's conclusion that Chevron repudiated its contract with the appellee, P & A, without affording P & A an adequate opportunity to perform. We therefore affirm.

### Facts

In December of 1975, Chevron U. S. A., Inc. (Chevron), the third party defendant and appellant in this action, hired P & A Well Service, Inc. (P & A), the third party plaintiff and appellee, to plug and abandon a Chevron well located in the Louisiana coastal waters of Breton Sound. The contract provided that P & A would complete the work within sixty days and would receive $28,900 and the rights to the tubing recovered from the well.

Work commenced in early March of 1976. In late March, equipment problems led the parties to agree to a different method of plugging the well. During the ensuing delay period, rough weather damaged a P & A barge, forcing P & A to withdraw from the well site on April 5, 1976, to obtain repairs.

On April 9, 1976, P & A's president, Edward Estis, telephoned Chevron's Algiers office and was told by an unidentified individual that the Breton Sound contract was cancelled, and that P & A should not return to complete its work at that site. In reliance upon that order, P & A did not return to the Breton Sound well. On June 25, 1976, Chevron sent a letter to P & A cancelling the Breton Sound contract, and in August of 1976, Chevron itself plugged and abandoned that well.

On August 10, 1976, P & A sent an invoice billing Chevron for costs incurred in its attempt to complete the Breton Sound contract, including the salvage value of the unrecovered tubing. This litigation was

precipitated when 3 A's Towing Company brought suit against P & A to recover sums due under certain towing contracts. P & A filed a third party demand against Chevron to recover the towing charges incurred in connection with the Breton Sound contract and in addition the lost profit resulting from Chevron's cancellation.

Following a bench trial, the district court concluded that since P & A had not forfeited its right to perform as of June 25, 1976, Chevron's letter cancellation of that date without first putting P & A in default constituted a violation of the contract, and that, in any event, Chevron had attempted to cancel the contract during the telephone conversation on April 9, 1976. Accordingly, the district court held that P & A was entitled to recover the profit it would have made had it been permitted to complete its performance, and entered judgment in favor of P & A in the amount of $77,980, with interest and costs.

**I**

Chevron does not dispute on this appeal that the April 9 telephone conversation did in fact occur. Chevron argues, rather, that since the unidentified individual who purported to cancel the contract was without authority—express, implied, or apparent—to act for Chevron in that regard, the cancellation cannot legally be imputed to Chevron, and therefore cannot constitute a violation of the contract entitling P & A to the recovery granted by the district court. Thus, Chevron challenges as erroneous the district court's conclusion of law that "[i]n

any event, ... *Chevron* did, in fact, attempt to cancel the Breton Sound contract during a telephone conversation on April 9." *See* Conclusions of Law, no. 7 (italics supplied).

We find no error in this conclusion of the district court. The law and jurisprudence of Louisiana[1] clearly establish that the unauthorized act of one purporting to bind a corporation may be implicitly ratified by the corporate principal through the knowing acquiescence of those having the authority, so long as the unauthorized act is not violative of the corporate charter, state law, or public policy. La.Civ.C. arts. 438, 439, 1840, 3000, 3010;[2] *Dunham-Pugh Co. v. Stephens*, 234 La. 218, 99 So.2d 88, 93–95 (1958); *Russ v. United Farm Equipment Co.*, 230 La. 889, 89 So.2d 380, 382 (1956); *Acadian Production Corp. v. Savannah Corp.*, 222 La. 617, 63 So.2d 141, 143–44 (1953). Such ratification has retroactive effect and is equivalent to prior authority. *E. g., Acadian Production Corp. v. Savannah Corp.*, 63 So.2d at 143. A ratification may be held to have occurred when corporate personnel with the authority to bind the corporation acquire, or are charged with, knowledge of the unauthorized act and fail to repudiate it within a reasonable period of time. *Dunham-Pugh Co. v. Stephens*, 99 So.2d at 93–94. Although the acceptance of benefits by a corporation may evidence ratification, the cited decisions do not hold such to be a requirement for ratification of an act by a corporate employee repudiating a corporate obligation.[3]

---

1. Although the principal suit invokes the admiralty jurisdiction of the federal courts, the third party claim before us on this appeal involves only issues of state law that the parties agree are governed by the law of Louisiana.

2. The cited Code articles are those identified by the Supreme Court of Louisiana in *Acadian Production Corp. v. Savannah Corp.*, 222 La. 217, 63 So.2d 141, 144 (1953) as embodying the ratification doctrine in Louisiana.

3. Chevron incidentally suggests that a corporation cannot be held to have ratified the unauthorized act of its agent under circumstances such as these unless it had full knowledge of the act and received and accepted the benefits

incurring to it from the act. Chevron thus appears to argue that since no benefits accrued to it from the cancellation of the contract on April 9, it cannot be held to have tacitly ratified it.

We disagree.

As noted by the Supreme Court of Louisiana in *Dunham-Pugh Co. v. Stephens*, 234 La. 218, 99 So. 88, 93 94 (1958), the general rule that a ratification occurs when personnel with the authority to bind the corporation acquire knowledge of the unauthorized act and thereafter fail to repudiate it within a reasonable period of time is particularly applicable where the delay in repudiating is a long one, where the failure to repudiate is accompanied by acts indicating

We find sufficient evidence in this record to support a conclusion that Chevron acquiesced in the April 9 telephone cancellation of the Breton Sound contract, thereby implicitly ratifying it and adopting it as an act of the corporation.

The record shows that the Breton Sound contract was negotiated for Chevron by E. J. Morgan, a staff engineer in Chevron's Algiers office. The contract was signed in Morgan's office. All subsequent discussions of that contract were with Morgan, or with his replacements, C. R. Block and Richard Gist. Virtually all of P & A's dealings with Chevron in connection with the Breton Sound well were conducted over Morgan's telephone. It was Morgan who represented Chevron in altering the procedure to be used in plugging the well and who agreed on Chevron's behalf to supply the mud for the new procedure.

On April 8, 1976, a call was placed to the home of P & A's president, Edward Estis, and a message was left requesting Estis to return the call. The number given was later determined to be that of James Isonhood, E. J. Morgan's immediate inferior, in Chevron's Algiers office. On April 9, 1976, Estis returned the call to the designated number and received no answer. He then called E. J. Morgan's number and spoke to the now-unknown individual who purported to cancel the Breton Sound contract.

Francis R. Daigle, the person who was second in rank at the Algiers office and E. J. Morgan's immediate supervisor, testified in his pretrial deposition, introduced at trial, that he was aware of the fact and the substance of the April 9 telephone conversation. That testimony was at least suggestive of a more general awareness throughout the Algiers office.

Despite that awareness, and despite numerous subsequent contacts between Chevron personnel and P & A personnel, neither Daigle nor any other Chevron employee ever repudiated that conversation, requested P & A to resume its operations on the Breton Sound well, or even inquired into P & A's continued absence from the well site. Chevron took no action in the ensuing weeks that was in any way inconsistent with a cancellation by telephone on April 9. The record shows that telephone cancellation with a follow-up letter of cancellation was an accepted practice in contracts of this sort; and indeed, on June 25, 1976, Chevron notified P & A by letter that it considered the contract cancelled, and thereafter rendered performance by P & A impossible by plugging and abandoning the Breton Sound well with its own resources in August of that year.

Under these facts, we find ample support for a conclusion that Chevron ratified the telephone cancellation by acquiescing in it, and therefore find it unnecessary to determine whether Chevron could likewise be bound by the cancellation under theories of actual or apparent authority. Chevron personnel with the authority to bind the corporation had knowledge of the telephone cancellation and failed to repudiate it within a reasonable period of time. We therefore

approval of the unauthorized act—such as receiving and retaining the benefits accruing from it—or where the circumstances call for a quick repudiation. There is no *requirement* that some measurable benefit inure to the corporate principal from the unauthorized act.

The cases cited by Chevron are not to the contrary. *See Bunge Corp. v. Biglane*, 418 F.Supp. 1159, 1168 (S.D.Miss.1976), *citing Ledoux v. Old Republic Life Ins. Co.*, 233 So.2d 731, 736 (La.App. 3d Cir. 1970). Both *Bunge* and *Ledoux* dealt with the alleged ratification by principals of contracts made without authority by agents or employees. In both, the courts relied heavily upon the presence or absence of the receipt and retention of benefits by the corporate principals as a key factor in de-

termining whether a ratification had occurred. But, in neither case did the court flatly state that such receipt and retention was essential to a tacit ratification.

To be sure, where the unauthorized act consists of the making of a contract that purports to bind a corporate principal, there is no more telling indication of the principal's ratification or approval of that act than its receipt and retention of the contracted-for benefits. But not all unauthorized acts involve the potential flow of some measurable benefit or consideration from a third party to the principal. In such cases, the principal's ratification or approval of the repudiation must obviously be manifested in terms other than the receipt of contracted-for benefits.

find no error in the district court's conclusion that *Chevron* had attempted to cancel the Breton Sound contract by telephone on April 9, 1976.

## II

 The legal effect of the telephone cancellation, if it is imputable to Chevron, is plain. Under Louisiana law, the active violation[4] of a contract renders the violating party liable in damages from the moment the violation occurs, with no requirement that he first be put in default. La.Civ.C. art. 1932. The unilateral anticipatory repudiation of the contract constitutes just such a violation. *Andrew Devel. Corp. v. West Esplanade Corp.*, 347 So.2d 210, 212–13 (La. 1977); *Mareck v. McHardy*, 234 La. 841, 101 So. 689, 694–95 (La.1958); 2 S. Litvinoff, Obligations § 238 (La.Civ.L. Treatise vol. 7 1975).

*Conclusion*

For these reasons, the judgment of the district court is AFFIRMED.

AFFIRMED.

---

4. La.Civ.C. art. 1931:

A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.