474 So.2d 1346 (1985)
Debbie Speights OGDEN, et al., Plaintiffs-Appellants,
v.
Billy S. CULPEPPER, et al., Defendants-Appellees.
No. 17100-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*1347 Bodenheimer, Jones, Klotz & Simmons by J.W. Jones, Shreveport, for plaintiffs-appellants.
Francis M. Gowen, Jr., Shreveport, for defendants-appellees.
Before HALL, SEXTON and NORRIS, JJ.
HALL, Judge.
Debbie Speights Ogden and several other shareholders of Action Finance Co., Inc. are appealing the trial court's decision in a quo warranto action holding that appellees, Billy Culpepper and Robert Lohnes, legally occupied positions on the board of directors of Action Finance Co., Inc.
The predecessor of Action Finance Co., Inc. (Action) was Action Finance Corporation. All of the stock of Action Finance Corporation was owned by Delbert Speights who was also president of the corporation and a member of the board of directors. The other officers and directors of the predecessor corporation were R.K. Talley and Billy Culpepper. It was Speights' desire to retire from the business, and organization of the new corporation was initially intended to be a means to that end. Speights planned to turn the business over to Talley and Culpepper by creating a new corporation in which Speights would own no stock.
Speights presided over an organizational meeting of the board of directors for the new corporation that was held on September 30, 1976. At that meeting it was decided that Talley would be president and treasurer of the new corporation and that Culpepper would be the new corporation's vice-president and secretary. Although Speights presided over this meeting "by common consent," Speights was not a director of the new corporation as evidenced by the initial report filed with the Secretary of State on October 6, 1976 in which only Talley and Culpepper were named as directors.
While Speights was not a director of Action, and initially planned to get out of the business altogether, he and members of *1348 his family ended up with a substantial amount of the new corporation's stock when Talley and Culpepper were unable to either purchase for themselves or to sell to others all the stock authorized for issuance. Talley and Culpepper purchased 3,000 shares each of the 11,000 shares originally issued and sold 475 more shares for a total of 6,475 shares. The remaining 4,525 shares were purchased by Delbert Speights and members of his family. Although Speights owns no shares in his own name, 3,850 of the 4,525 shares controlled by Speights and his family are owned by the Speights Investment Corporation which essentially is the old Action Finance Corporation owned by Speights as the sole shareholder. Aside from being a stockholder, Speights was also instrumental in securing a line of credit for Action with First National Bank of Shreveport, and kept a close watch over the new corporation's business.
Robert Lohnes went to work for the old corporation four months before the formation of the new corporation. He left his job as a collection manager for Shreve Auto Finance, a company for whom he had worked for seven years, after being approached by Talley. At first Lohnes was neither an officer nor a director of the new corporation, and until October 1978 worked solely as a manager for the collection department of the old and then the new corporation.
R.K. Talley resigned as an officer and director of Action in October 1978, and sold his 3,000 shares back to the company at a loss. Prior to Talley's resignation, Action had not been doing well financially. Talley originally purchased his stock at $10.00 a share, but sold it for $1.67 per share. Shortly after Talley's resignation, Lohnes was called into an office by Speights and Culpepper and told that he was being made secretary of Action. He was also given a pay raise at that time.
In September 1979, approximately a year after Lohnes was promoted, 1,650 shares of stock were issued to Lohnes. These shares represented part of the treasury stock created when Talley sold his shares back to the corporation. The 1,650 shares initially were issued on credit, but were eventually paid for by Lohnes out of bonuses he received from the corporation. He paid $1.67 per share for the stockthe same price for which the shares had been bought from Talley. No notice was sent to the shareholders prior to the issuing of the stock.
In June 1984, a stockholders meeting was called at which Culpepper and Lohnes voted their stock to elect themselves directors of Action. All shareholders were present or represented. While the stock held by Speights and his family members was voted in opposition, that stock, being a minority of the stock in the corporation, was insufficient to block the election of Culpepper and Lohnes.
In July 1984, a suit in quo warranto was brought by those Action shareholders who are now appellants, challenging Culpepper and Lohnes as directors of Action. Delbert Speights and Speights Investment Corporation did not join as parties plaintiffs in that action. Culpepper and Lohnes then brought their own quo warranto action challenging Delbert Speights and his wife, Ruth Speights, as directors. The Speights claimed membership on the board by virtue of a special meeting of the shareholders allegedly held in October 1978 shortly after the resignation of Talley.
The trial court found that any action taken by the stockholders at the meeting of October 1978, if that meeting ever occurred, was invalid since proper notice to the shareholders was never sent. The court further found that the only director of Action in 1979 when Lohnes was issued his stock was Culpepper, that Delbert Speights was fully aware of the issuance of stock to Lohnes, that Culpepper as the sole director was entitled to fix a price for the treasury stock sold to Lohnes, and that the stockholders meeting in June 1984 was a validly called and noticed meeting. Based upon the preceding findings, the trial court held that Lohnes' stock was validly issued and that Lohnes was properly elected to the board of directors along with Culpepper. On the other hand, Ruth and Delbert *1349 Speights were held not to be directors of Action.
A final issue considered by the trial court was the effect of certain stock sale restrictions found in the corporation's articles of incorporation. These restrictions essentially state that the owner of corporation stock must notify the secretary of the corporation in writing of the owner's desire to sell, the proposed sale price, and the name of the proposed purchaser. The secretary in turn would notify the corporation's shareholders to give any of them the opportunity to buy the stock at the proposed price. Although these restrictions appeared in the articles of incorporation, no restrictions nor notice of restrictions appeared on the stock certificates. The trial court noted that the law is clear that for a stock restriction to have effect the restriction or some summary at least sufficient to give notice to the purchaser must be on the certificate. The court found that no restrictions appeared on the stock certificate issued to Lohnes, and that the evidence clearly indicated that despite being secretary of the corporation, Lohnes had no knowledge of any stock restrictions. Accordingly, the sale of the stock to Lohnes was not found invalid because of the restrictions.
The appellants in this case chose not to appeal that portion of the trial court's judgment holding that Ruth and Delbert Speights were not members of the board of directors; that portion of the judgment is now final. Appellants contest only that portion of the trial court's decision holding that Lohnes and Culpepper are members of the board of directors.

ISSUES PRESENTED
Was the sale of the treasury stock invalid because:
(a) the articles of incorporation contained restrictions on sale of the corporation stock?
(b) payment was made in installments after issuance of the stock?
(c) Billy Culpepper, as the sole member of the board of directors in 1979, lacked the authority to fix a price for the stock and allow stock to be issued to Lohnes?
Because we find that the sale of the treasury stock to Lohnes is valid and that Lohnes therefore was entitled to vote the stock to help elect himself and Culpepper to the board of directors, the judgment of the trial court is affirmed.

STOCK RESTRICTIONS
Article 11 of the corporation's articles of incorporation provides:
RESTRICTION ON SALE OF STOCK
No sale or transfer of the stock of this Corporation shall be made by any owner thereof until such owner shall have notified the Secretary of the Corporation in writing of his desire to sell and transfer the same, stating the number of shares he desires to sell, the price for which he proposes to sell, and the name of the proposed purchaser. Whereupon, the Secretary shall, within two (2) days after receipt of said notice of intention to sell, give notice in writing to each of the Shareholders of the corporation, stating the names of the proposed seller and purchaser, the number of shares that it is desired to sell and price therof; the Shareholder, who shall first signify to the Secretary his acceptance in writing of the stock so proposed to be transferred at the price so stated, shall be entitled to purchase and have the same transferred to him; provided, however, that if the Secretary shall not receive such acceptance from any Shareholder within Fifteen (15) days after delivering or mailing to the Shareholders notice of said proposed transfer, then, and in that event, the proposed sale and transfer may be made.
The above quoted stock sale restriction appears to be designed to apply to situations where a corporate shareholder wishes to sell corporation stock to another individual. The wording of the restriction creates doubt that the restriction should have application in a situation where the corporation itself wishes to sell treasury *1350 stock. Restrictions on the transfer of corporate stock are to be strictly construed as they unduly restrict the free flow of commerce. Avoyelles Trust and Sav. Bank v. Liliedahl, 348 So.2d 153 (La.App. 3d Cir. 1977), writ denied 350 So.2d 1228 (La.1977). Nevertheless, assuming that the restriction could apply to the sale of treasury stock, in light of applicable statutory provisions we hold that the sale of treasury stock in this case was not invalidated by the stock sale restriction.
One statute containing provisions applicable to restrictions on stock sales is LSA-R.S. 12:57. Subsection F of that statute provides:
F. (1) No by-law or other restriction on the transfer of shares, (2) no provision for compulsory offer of shares of its own stock for purchase by, or sale to, the corporation, (3) no agreement among shareholders binding on others than the parties signatory thereto, and (4) no lien or privilege in favor of a corporation on shares of its own stock, shall be recognized or enforced, unless such restriction, provision or agreement, or the right of the corporation to such lien or privilege, is set forth or summarized, or a reference thereto and information as to where the same may be inspected is contained, in the certificates representing the corporations' shares.
A second applicable statute is LSA-R.S. 10:8-204 which provides:
Unless noted conspicuously on the security, a restriction on transfer imposed by the issuer, even though otherwise lawful, is ineffective, but this provision shall not dispense with the requirements of R.S. 12:57(F) and R.S. 12:210(D). A restriction on transfer shall be effective, even if the restriction is not noted on the certificate, against persons having actual knowledge of the restriction.
The comment to 10:8-204 indicates that the statute is designed to adopt the "actual knowledge" concept found in the corresponding Uniform Commercial Code article, while retaining in this state's laws the provisions of LSA-R.S. 12:57(F) relating to business corporations and LSA-R.S. 12:210(D) relating to non-profit corporations. Thus, the provisions of 10:8-204 were intended more to augment than to supplant the provisions of 12:57(F). See Thibodeaux v. Pioneer Land Development, etc., 420 So.2d 1162 (La.App. 5th Cir.1982), amended to award legal interest, 423 So.2d 1178 (La.1982).
In the present case no restrictions or references of any kind to restrictions on the transfer of stock were printed on the stock certificates issued by Action. Clearly, the restrictions found in the corporation's articles of incorporation would be ineffective under 12:57(F). Furthermore, the trial court specifically found the evidence indicated that Lohnes had no actual knowledge of any restrictions. Because we find no clear error in the trial court's determination regarding Lohnes' actual knowledge, the actual knowledge provisions of 10:8-204 do not save the restrictions from being ineffective.

PAYMENT BY INSTALLMENTS AFTER ISSUANCE OF STOCK
Issuance of shares and payment of consideration is addressed by LSA-R.S. 12:52 which provides in part:
A. Par value shares may be issued initially for such consideration expressed in dollars, not less than the par value thereof, as shall be fixed by the board of directors. Shares without par value may be issued from time to time for such consideration expressed in dollars as may be fixed by the board of directors or by the shareholders by a vote of a majority of the voting power present, if the articles reserve to the shareholders the right to fix the consideration provided however, the consideration for such shares may be initially fixed by the incorporators. Treasury shares may be disposed of by the corporation for such consideration as may be fixed from time to time by the board of directors. All fully paid shares shall be nonassessable.
B. Shares issued (1) in payment of a stock dividend, (2) pursuant to exercise of conversion rights, (3) in exchange for, *1351 or in respect of, outstanding shares pursuant to a reclassification of stock, or (4) in a merger or consolidation as provided in the merger or consolidation agreement, shall be considered as fully paid when so issued.
C. The consideration for shares issued otherwise than as stated in subsection B of this section, shall be paid in cash or in corporeal or incorporeal property, or services actually rendered to the corporation, the fair value of which is not less than the dollar amount of the consideration fixed for the shares, before the shares are issued. Upon payment of the consideration fixed therefor, such shares shall be considered as fully paid. Cash consideration for shares may not be paid by the purchaser's note, secured or unsecured, or uncertified check; and in case of delivery of such a note or check in payment for shares, the shares shall not be issued until the note or check has been paid in full.
While Subsection C of 12:52 provides that consideration shall be paid before shares are issued, it is arguable that Subsection C does not apply to the sale of treasury stock. Subsection A refers to issuance of par value shares and to issuance of shares without par value, but refers to "disposal" rather than to "issuance" of treasury shares. Since treasury shares are already issued shares, having been subsequently acquired but not cancelled by the corporation (LSA-R.S. 12:1[X]), and since shares are restored to the status of unissued shares by being cancelled (LSA-R.S. 12:55[G]), one may argue that the sale of treasury stock is not an "issuance" of stock within the meaning of 12:52(C).
However, even if 12:52(C) does apply to treasury stock, the "issuance" of treasury stock in this case may not now be attacked as invalid. The statute provides that upon payment of the consideration fixed, shares shall be considered as fully paid. Robert Lohnes paid the consideration fixed for his shares of stock; his shares are now considered as fully paid. Because Lohnes' shares are considered as fully paid, Lohnes is legally entitled to have those shares issued to him. No useful purpose could now be served by declaring that the shares to which Lohnes is presently entitled may initially have been improperly issued. The problems related to issuance of stock on credit which existed prior to the time payment was complete ceased to exist as of the time the final payment was made; once the consideration fixed was paid, the purpose of the statute was fulfilled. According to the provisions of 12:52(C), payment of the cash consideration for shares by the purchaser's note or uncertified check is improper. Nevertheless, when such a note or check is given, the shares may be issued after the note or check has been paid in full. Similarly, we hold that in this case, once payment in full had been made, the shares could be considered as fully-paid, properly-issued shares even if the initial issuance may have been improper.

AUTHORITY OF THE SOLE DIRECTOR
Both the articles of incorporation of Action and the statutory provisions of LSA-R.S. 12:81(A) require that Action's board of directors be composed of no less than three persons. The trial court correctly found that in 1979, at the time of the issuance of Lohnes' stock, Billy Culpepper was the sole member of Action's board of directors. Because the board was improperly constituted, Culpepper lacked authority to set a price for the treasury shares and to allow Lohnes to purchase them. However, Culpepper's acts, while voidable, were not void ab initio. They were valid until voided, not void until validated. As voidable acts, they were capable of being ratified by the corporation's stockholders, and such ratification by the stockholders may be implied from acquiescence. In the present case several years elapsed from the time the stock was sold to Lohnes until this action challenging the validity of that sale was brought. During the interim, not one shareholder ever complained of Lohnes' purchasing the stock. Under these circumstances, acquiescence may certainly be implied unless the shareholders neither had actual knowledge of the sale *1352 nor should have had such knowledge imputed to them.
While it may well be that some of the shareholders/appellants had no actual knowledge of the sale of the stock, it is clear that the reason for the appellants lacking such knowledge was the complete trust that all members of the Speights family placed in Delbert Speights. The evidence presented at trial left no doubt that the appellants placed their faith in Speights to watch out for their interests in the corporation and trusted his judgment. A well established principle in corporation law is that where a corporation entrusts an officer or director with management of the corporation's business, the corporation will not later be heard to deny the authority of that individual to act on behalf of the corporation. See City Sav. Bank and Trust Co. v. Shreveport Brick Co., Inc., 172 La. 471, 134 So. 397. See also Harris v. H.C. Talton Wholesale Grocery Co., Inc., 11 La.App. 331, 123 So. 480. Similarly, we hold that in a closely held corporation where an individual controls a significant portion of the shares of the corporation, takes an active role in the managing of the corporation's business, and is entrusted by related stockholders to watch out for and to act in their best interests, that individual's knowledge of the corporation's business affairs may be imputed to those who have entrusted him to act on their behalf. In the instant case, we find that Delbert Speights had actual knowledge of the issuance of the stock to Lohnes. The testimony at trial indicates that it was Speights who initially suggested that Lohnes be allowed to acquire stock in the corporation, that Speights was present at the corporation's office the day the certificate was prepared, and that on that same day Speights talked to Lohnes about working harder since Lohnes had become a shareholder.
Thus we hold that the appellants should have Delbert Speights' actual knowledge of the sale of stock to Lohnes imputed to them, and that because of such knowledge, the appellants have ratified the sale by acquiescence. Having so ratified the sale, they cannot now be heard to complain that the sale was not properly authorized, and that Lohnes should not have been able to vote the stock he purchased.
In accordance with the reasons stated above, the sale of the treasury stock is held valid, the election of Culpepper and Lohnes to the board of directors of Action is held proper, and the judgment of the trial court denying the appellant's quo warranto action and holding Culpepper and Lohnes to be the directors of Action is affirmed. All costs of appeal shall be assessed to the appellants.
AFFIRMED.