| ¶ DOUCET, Judge.
The Plaintiff, Deborah Conner Hotard, filed this action seeking to have the June 22, 2000 meeting of the shareholders of the Defendant, Diabetes Self Management Center, Inc. (DSMC), declared invalid, and seeking judicial recognition of the status of certain shareholders, employees and board members of the corporation. The trial court dismissed her claims. Hotard appeals.
The trial court accurately outlined the facts underlying this matter as follows:
This matter is before the Court on a Petition for Declaratory Judgment seeking to have a shareholder meeting that occurred on June 22, 2000, declared invalid. The suit also seeks judicial recog *95 nition of the status of certain shareholders, employees and board members of the defendant corporation. A trial on the merits was heard January 23, 2002, following which the matter was taken under advisement.
The parties stipulated to the following facts before beginning the trial: (1) pri- or to June 22, 2000, neither Hotard, Hanks, Abel, or Louisiana Healthcare had contributed any money in payment of their shares; (2) that prior to June 22, 2000, there were no meetings to establish the par value of the corporation’s stock; (3) that prior to June 22, 2000, Melissa Hanks was not elected to the board of directors; and (4) that there were no written stock subscription agreements or employment contracts.
The testimony established that Diabetes Self Management Center, Inc. (“DSMC”) was incorporated in January of 1998. The first board of directors included Frank Hebert, Rebecca Abel, Deborah Hotard, and Keith Lamm. The minutes of the first board meeting dated January 26, 1998, reflect that the shareholders included the members of the board and William Fuqua and that they held a total of 188 shares. In 1998, Keith Lamm, Frank Hebert, and William Fuqua withdrew as shareholders of the corporation and DSMC redeemed their stock. The minutes of the board meeting of October 20, 1998, indicate that Melissa Hanks then held shares of stock and participated in board meetings. The stock certificates indicated that Hanks had 12 shares, changing the total outstanding stock to 108 shares after Hebert, Lamm and Fuqua withdrew. Until June 22, 2000, Abel, Hanks and Hotard conducted the affairs of the corporation and represented themselves in corporate documents as shareholders owning shares of DSMC in the following proportions: Hotard (48), Abel (48), and Hanks (12).
|gBy notice mailed June 12, 2000, Abel called a shareholder meeting for June 22, 2000. The Plaintiff, Deborah Hotard, objected to the meeting on the basis that no stocks had been issued, no par value ever set for the stocks, and consequently, that there were no shareholders. Hotard appeared at the meeting to voice her objection, and then withdrew with her attorney. After she left, Hanks was elected to the board of directors and Abel, as President of the corporation, terminated the employment of Hotard. Thereafter, Hanks and Abel sold their interest in the corporation (totaling 60 shares) to Louisiana Health Care Group, Inc. for $30,700 plus the assumption of any bank loan guarantees relating to any lines of credit by Iberia Bank for loans by stockholders to the company. On March 6, 2001, the board set the par value of its stock at $1,000 calling for payment by March 9, 2001. Louisiana Health Care Group, Inc. subsequently paid for its shares of stock before the deadline. The Plaintiff, Hotard, did not. At a shareholder’s meeting held March 12,-2001, the shareholders ratified the actions of the shareholders at the meeting of June 22, 2000, and ratified the actions of the board at the meeting of March 6, 2001.
The trial court dismissed Hotard’s claims. Hotard appeals, asserting the following assignments of error:
1. The Trial Court erred in holding that there were Shareholders of DSMC on June 22, 2000 as it was stipulated that:
A) Prior to June 22, 2000 there was no meeting of the Board of Directors of DSMC to place a par value on the shares of stock in DSMC; and,
*96 B) Prior to June 22, 2000 no interested party paid any cash compensation for shares of stock in DSMC.
2. The Trial Court erred in failing to hold that Hotard and Abel were the only members of the Board of Directors of DSMC on June 22, 2000.
3. The Trial Court erred in failing to rule that any action taken by the Shareholders and/or Board of Directors of DSMC after June 22, 2000 was null and void because:
A) There are no Shareholders of DSMC; and,
B) As there were no Shareholders of DSMC, Hanks could not be elected, to the Board of Directors of DSMC at the meeting of June 22, 2000; and, since Hotard did not attend any meeting of the Board of Directors held after June 22, 2000 a quorum was not present and no meetings of the Board of Directors of DSMC could be held.
|c.4. The Trial Court erred in failing to declare that Hotard and Abel have subscription rights to forty-eight (48) shares each of stock in DSMC.
5. The Trial Court erred in failing to hold that Hanks did [not] have any subscription rights to twelve (12) shares of stock in DSMC.
These are essentially the same assertions made by the Plaintiff at trial. The trial court found as follows:
The Plaintiff is specifically requesting judgment declaring the following: (1) that she be reinstated as an officer and employee of the Corporation retroactive to June 19,2000; (2) that Hotard and Abel have subscription rights to 48 shares of stock each; (3) that Hanks has no subscription rights; (4) that Hotard and Abel are the sole members of the board of directors; and (5) that any action taken by the board of directors after June 22, 2000, is invalid and of no effect.
Louisiana law is clear that subscriptions for shares of stock are required to be in writing. “It is a general rule that the subscription must be for a definite number of shares, and must show the amount that the defendant agrees to pay therefore.” Ashley v. Coleman, 219 So.2d 574, (La.App. 4 Cir.1974), at 576, citing Fletcher’s Cyclopedia of the Law of Private Corporations, Vol. IV § 1479. Accordingly, this Court finds there is insufficient evidence to conclude that any of the principals received subscriptions for shares.
On the other hand, La.R.S. 12:52(0 provides that consideration shall be paid before shares are issued. In the case of DSMC, there was no consideration paid for the stock by any of the shareholders at the time of issuance. While it is therefore arguable that the issuance of stock by DSMC was invalid, this statute also provides that upon payment of the consideration fixed, shares shall be considered as fully paid. Once the shares of DSMC had a value assigned and payment was received, the shares could be considered as fully-paid, properly-issued shares even if the initial issuance may have been improper. Ogden v. Culpep-per, 474 So.2d 1346 (La.App. 2 Cir.1985).
Documents executed by the corporation evidenced that Hanks was a shareholder of 12 shares. Some of these documents are signed by Plaintiff indicating her concurrence to an issuance of 12 shares to Hanks. Hanks and Abel both testified that Hanks, was involved in the formation of the company. Hanks testified that she was offered the shares by Hotard and Abel. It is more than logical to infer that she was active in the conduct of the corporation and that at some time after the first board meeting, but prior to the second board meeting, *97 DSMC issued 12 shares to Hanks, but never received payment for the same | ¿because there was no established par value and no one else made payment for shares either.
Considering the preponderance of the evidence with regard to the 12 shares of stock belonging to Hanks, the Court makes a factual finding that on June 22, 2000, Hanks was a shareholder that had not made payment for her shares to the same extent as all other shareholders. Once the value of the stock was established by the board at the meeting of March 6, 2001, it was incumbent upon all shareholders to make payment to the corporation for their shares in order to have the benefit of 12:52(C), which validates improperly issued stock upon payment. Hotard never made payment for her shares after March 6, 2001, and consequently the Court has previously ruled that she is not a shareholder.
By disposing of this shareholder status of Hanks in favor of the Defendants, it follows that there were shareholders at the meeting of June 22, 2000, the shareholders present constituted a quorum, the appointment of Hanks to the board of directors should stand, and the actions taken by the board of directors that included Hanks are valid.
We have reviewed the legal and factual finding of the trial court in light of the evidence of record. Finding no error in the trial court’s reasoning, we adopt the reasons of the trial court as our own.
As a result, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the Plaintiff/Appellant.
AFFIRMED.