United States Court of Appeals
Fifth Circuit

**F I L E D**

October 16, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-30173
(Summary Calendar)
_____

ROY C. JACKSON

Plaintiff-Appellant

v.

FORD MOTOR CO.

Defendant-Appellee

-----------------------
Appeal from the
United States District Court
for the Western District of Louisiana
(3:04-CV-2296)
----------------------

Before SMITH, WIENER, and OWEN, Circuit Judges.

PER CURIAM[*]:

This appeal arises out of Louisiana Enterprise Group, L.L.C.'s ("LEG") operation of a Defendant-Appellee Ford Motor Co. ("Ford") dealership in Durant, Oklahoma — Durant Ford Lincoln Mercury Sales, Inc. ("the Dealership"). Plaintiff-Appellant Roy C. Jackson ("Jackson") was a member/manager of LEG and operated the dealership on behalf of LEG. LEG originally invested $220,000.00 in the Dealership. Of that sum, Jackson personally

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

contributed $125,000.00.

On May 31, 2001, less than a year after entering into the dealership agreement, Ford and LEG agreed that Ford would repurchase LEG's interest in the Dealership for $220,000.00, and that, in return, LEG would resign its operation of the dealership and execute a release in favor of Ford. On July 10, to fulfill its obligation, Ford issued a $220,000.00 check to LEG as payment-in-full for LEG's interest. The check was mailed to Kim McTurner, another member of LEG, and deposited in LEG's bank account. Shortly thereafter, Jackson received a portion of the $220,000.00 — either $63,245.67 or approximately $68,000.00[1] — from LEG's bank account. McTurner wrote the check for that payment.

After LEG's resignation, Ford's Dealer Development Regional Manager ("the Manager") conducted an exit interview with Jackson. During the interview, the Manager used a standard "Operator Exit Assessment" form ("the Exit Assessment") on which the Manager checked a blank to indicate that he would recommend Jackson for another operator position and acknowledged that "Jackson could be successful as a . . . Operator."

---

[1] In his deposition taken May 9, 2005, Jackson testified that he received approximately $68,000.00; however, in a declaration executed March 16, 2006, Jackson declared he only received $63,245.67.

In September 2004, Jackson filed a petition in Louisiana state court asserting claims for breach of contract and return of his initial investment.[2] This action was subsequently removed to the district court.

In November 2005, the magistrate judge entered a Report and Recommendation recommending that summary judgment be granted in Ford's favor as to Jackson's breach of contract claim, because the Exit Assessment did not create a contractual relationship between the parties or any attendant contractual obligations. In January 2006, over Jackson's objections, the district court adopted the Report and Recommendation and granted summary judgment in Ford's favor on the breach of contract claim.

In March, the magistrate judge entered a Second Report and Recommendation recommending that summary judgment be granted in Ford's favor on Jackson's reimbursement claim. In May, without objection from Jackson, the district court adopted the Second Report and Recommendation and granted summary judgment in Ford's favor on the reimbursement claim. Jackson now appeals both of the district court's rulings.

Summary judgment is appropriately granted when there is no

---

[2] In addition, Jackson asserted a claim under the Louisiana Unfair Trade Practices Act. The district court dismissed this claim as having prescribed and Jackson has not appealed this ruling. Thus, we do not address it.

3

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3]  If the moving party establishes its  initial burden of demonstrating the absence of a material fact issue, the nonmoving party who bears the burden of proof at trial must sufficiently establish that there is a material fact issue concerning the essential elements of its cause of action.[4] We review a grant of summary judgment de novo.[5]

A party's failure to object timely in writing to a magistrate judge's report and recommendation relegates the appeal of a district court's adoption thereof to plain error review.[6] In reviewing an appeal under the plain error standard, we "have discretion to correct unobjected-to (forfeited) errors that are plain ('clear' or 'obvious') and affect substantial rights."[7]  In exercising our discretion, we should be mindful of those errors affecting substantial rights "if the error seriously affects the fairness, integrity or public reputation of judicial

---

[3] Fed. R. Civ. Proc. 56(c).

[4] Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

[5] Lejeune v. Shell Oil Co., 950 F.2d 267, 268 (5th Cir. 1992).

[6] Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. 1996).

[7] Id. at 1424 (emphasis in original).

4

proceedings."[8]   Therefore, we review the district court's first summary judgment <u>de novo</u> and the second summary judgment for plain error.

Under Louisiana law, "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[9]  An obligation is a legal relationship whereby a person binds himself to render a performance in favor of another.[10]  The Exit Assessment failed to create any obligations on behalf of Ford.  Instead, it was simply a standard one-page assessment form in which the Manager personally recommended Jackson for an operator position at another dealership.  It, in no way, obligated Ford to do anything.

Additionally, Ford executed the release with LEG, not Jackson.  Pursuant to the release, Ford agreed to and did remit the $220,000.00 to LEG, not Jackson.  The $220,000.00 check was sent to McTurner, a member of LEG, who, like Jackson, was a signatory to LEG's resignation and release.  The $220,000 check was then deposited in LEG's bank account.

Nowhere in LEG's resignation or release did LEG specify

---

[8] <u>Id</u>. (quoting <u>United States v. Olano</u>, 507 U.S. 725, 736 (1993)).

[9] La. Civ. Code art. 1906.

[10] <u>Id</u>. art. 1756.

5

where or to whom the $220,000.00 was to be sent. Rather, these documents only indicated that Ford was to pay LEG the entire $220,000.00. Moreover, the dealership agreement is silent as to where or whom Ford must send these sums. Lastly, LEG's articles of organization do not limit any of its members authority to deposit checks into its bank account. Ford did what it agreed to do —— return LEG's initial investment to it.

Moreover, even if Ford had acted inappropriately, by acquiring knowledge of Ford's actions and failing to repudiate Ford's actions until September 2003 —— over two years after Jackson received a portion of the $220,000.00 —— Jackson ratified both Ford and McTurner's actions.[11] Therefore, based on the applicable law and our extensive review of the parties' briefs and the record on appeal, we conclude that the district court did not commit any error. Accordingly, we affirm the summary judgments of the district court in favor of Ford.

AFFIRMED.

---

[11] 3 A's Towing Co. v. P & A Well Service, Inc., 642 F.2d 756, 758 (5th Cir. 1981).

6